1
2

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

3

BY:     ANN THOMPSON UGLIETTA (013696)
         CHARLES TRULLINGER (018936)

4

         JOSEPH I. VIGIL (018677)
         Deputy County Attorneys

5

         uglietta@mcao.maricopa.gov
         trullinc@mcao.maricopa.gov

6

         vigilj@mcao.maricopa.gov

7

CIVIL SERVICES DIVISION
225 West Madison Street

8

Phoenix, Arizona 85003
Telephone (602) 506-8541

9

Facsimile (602) 506-4317
ca-civilmailbox@mcao.maricopa.gov

10

MCAO Firm No. 00032000

11

Attorneys for Allister Adel Maricopa
County Attorney

12

**IN THE UNITED STATES DISTRICT COURT**

13

**FOR THE DISTRICT OF ARIZONA**

14
15
16

Samuel Luckey and Michael Calhoun, on
behalf of themselves and those similarly
situated, and,

17

Arizona Attorneys for Criminal Justice,

18

Plaintiffs,

19

v.

20
21

Allister Adel, in her official capacity as
County Attorney for Maricopa County

22

Defendants.

No. CV21-01168-PHX-GMS (ESW)


**DEFENDANT MARICOPA COUNTY ATTORNEY ALLISTER ADEL'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**[DOC. 5]**

23
24
25
26
27
28

# Table of Contents

**MEMORANDUM OF POINTS AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . .1

**Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    **I.**    **Factual Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    **II.**    **Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

**Legal Standard** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    **I.**    **The Court should deny Plaintiffs' Rule 23 Motion because: (A) the *Younger* doctrine requires dismissal of Luckey's and Calhoun's claims, as well as the claims of putative class members; and (B) Plaintiffs' claims fail on the merits as a matter of law.** . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

        **A. The *Younger* doctrine requires dismissal of Luckey's and Calhoun's claims, as well as the claims of putative class members.** . . . . . . . . . . 4

        **B. Plaintiffs' claims fail on the merits as a matter of law.** . . . . . . . . . . . 5

    **II.**    **Luckey and Calhoun fail to meet their burden under Rule 23.** . . . . . . . 6

    **III.**    **Luckey and Calhoun Lack Standing to Serve as Class Representatives re: EDC Defendants Who Have Rejected Initial Plea Offers and/or EDC Defendants Who Have Entered into Plea Agreements.** . . . . . . . . . . . . . .15

    **IV.**    **The *Rooker-Feldman* Doctrine Bar Certain Putative Class Members' Requests for Injunctive Relief** . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . 16

Defendant Maricopa County Allister Adel ("Defendant" or "Adel") responds in opposition to Plaintiffs' "Motion and Memorandum of Points and Authorities in Support of Class Certification" ("Rule 23 Motion") (Doc. 5).  The Court should deny the Rule 23 Motion because: (1) for the reasons set forth in Defendant's Motion to Dismiss (Doc. 25), (A) the *Younger* doctrine requires dismissal of Luckey's and Calhoun's claims, as well as the claims of putative class members; and (B) Plaintiffs' claims fail on the merits as a matter of law; (2) Plaintiffs fail to carry their burden to affirmatively establish through "evidentiary proof" the "commonality," "typicality," and adequacy" requirements for class certification per Rule 23(a), Fed. R. Civ. P.;  (3) Luckey and Calhoun lack standing to serve as "Post-Waiver Class" class representatives re: EDC defendants who have rejected an initial plea offer or who have entered into a plea agreement; and (4) the *Rooker-Feldman* doctrine bars certain putative class members' claims and requests for relief.

**Motion for Judicial Notice**:  For the reasons set forth in Defendant's Motion for Judicial Judice (Doc. 22) and Defendant's Motion and Notice to Supplement Exhibits in Support of Motion to Dismiss and To Take Judicial Notice of Supplemental Exhibit (Doc. 26), incorporated herein by reference, Adel moves that the Court take judicial notice and consider Exhibits 1 – 11, attached hereto, in ruling on the Rule 23 Motion.

## Memorandum of Points and Authorities

### Background

**I.     Factual Background.**

To conserve judicial resources, Adel hereby incorporates by reference the Background section of her Motion to Dismiss (Doc. 25, Background, §§ I – IV), as though fully set forth here.  For the Court's review in ruling on the Motion to Certify, Adel has attached Exhibits 1 – 11 hereto (Ex. 1 – 10 are the same Exhibits attached to the Motion to Dismiss, Doc. 25; Ex. 11 is the same Exhibit attached to the Motion and Notice to Supplement, Doc. 26).  In addition, Adel has attached the Declaration of Jason Kalish,

MCAO Deputy County Attorney and Division Chief, MCAO Trial Division ("Kalish Dec."), as Exhibit 12 hereto. *See* Index of Exhibits and Exhibits 1 – 12 hereto.

## II.    Procedural Background.

On July 7, 2021, Plaintiffs Luckey, Calhoun, and the Arizona Attorneys for Criminal Justice ("AACJ") filed their Complaint.  (Doc. 1) Plaintiffs allege that Adel's plea policy and practice in Early Disposition Court, Maricopa County Superior Court ("EDC"), violates the Sixth and Fourteenth Amendments to the U.S. Constitution.  The Complaint sets forth putative class allegations seeking declaratory and injunctive relief for two putative classes, a "Pre-Waiver Class" and a "Post-Waiver Class," proposing Calhoun and Luckey as putative class representatives, respectively, under Rule 23(b)(1) or (2), alternatively.  (Doc. 1, ¶¶ 103 – 116, 144 - 145).

That same day, Plaintiffs filed their Rule 23 Motion.  (Doc. 5) They set out a "Background" and their criminal case histories without citing any evidence (none was proffered) or even citing the allegations in the Complaint.  (*See id.* at 2–5).  They also state: "For additional detail, Plaintiffs respectfully refer the Court to the robust facts contained in their Complaint and supporting documents."  (*Id.* at 4, n.1).  But Plaintiffs do not attach any "supporting documents" to their Rule 23 Motion or otherwise explain what are claimed to be those "supporting documents."  They also make allegations about the merits of their claims (*Id*. at 2 – 5) without identifying any case law authority.

On August 18, 2021, Adel timely filed her Motion to Dismiss the Complaint with prejudice. (Doc. 25).  Adel also filed her Motion for Judicial Notice and her Motion to Strike Doc. 6-1 Exhibits and exhibits attached thereto. (Docs. 22, 23).  On August 25, 2021, Adel filed her Defendant's Motion and Notice to Supplement Exhibits in Support of Motion to Dismiss and to Take Judicial Notice of Supplemental Exhibit 11 (Doc. 26).

### Legal Standard

To certify a class under Rule 23, Fed. R. Civ. P., Plaintiffs bear the burden of establishing each of the requirements of Rule 23(a) and at least one of the conditions in Rule

23(b). *See* Fed. R. Civ. P. 23(a)-(b); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). There are three possible types of class actions. *See* Fed. R. Civ. P. 23(b)(1)-(3). In their Complaint, Plaintiffs propose to certify the putative classes under subsections (b)(1)((A) or (b)(2) (Doc. 1, ¶¶ 115, 116), although in their Motion to Certify, they also cite subsection (b)(1)(B) (Doc. 5 at 14).

Plaintiffs bear "the burden of affirmatively demonstrating through evidentiary proof that the class meets the prerequisites of Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. Rather, Plaintiffs "must affirmatively demonstrate [their] compliance with the Rule— that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 350 - 51 (emphasis in original). Plaintiffs also must satisfy "through evidentiary proof" at least one of the provisions of Rule 23(b). *Comcast*, 569 U.S. at 33.

In deciding whether to certify a class, the Court must undertake a "rigorous analysis" of whether Rule 23's requirements have been satisfied. *Wal-Mart*, 564 U.S. at 351. The U.S. Supreme Court has "emphasized that it 'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Comcast*, 569 U.S. at 33 (quoting *Wal-Mart*). Such an analysis will frequently entail "overlap with the merits of the plaintiff's underlying claim," because the "'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* at 33 – 34 (quoting *Wal-Mart*). The Court may look beyond the pleadings to any "material sufficient to form a

reasonable judgment on each Rule 23(a) requirement," including evidence that would be inadmissible at trial.  *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9ᵗʰ Cir. 2018) ("[A] district court should analyze the persuasiveness of the evidence presented at the Rule 23 stage.").  "While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by*, 273 F.3d 1266 (9th Cir. 2001).

## Argument

I.   **The Court should deny Plaintiffs' Rule 23 Motion because: (A) the *Younger* doctrine requires dismissal of Luckey's and Calhoun's claims, as well as the claims of putative class members; and (B) Plaintiffs' claims fail on the merits as a matter of law.**

A.   **The *Younger* doctrine requires dismissal of Luckey's and Calhoun's claims, as well as the claims of putative class members.**

Plaintiffs seek to certify a putative "Pre-Waiver Class" proposed to be represented by Calhoun which would include "all current and future people whom the MCAO has charged and assigned to Maricopa County's EDCs . . . who have not yet made the decision to affirm or waiver [sic] their preliminary hearing, or reject their initial plea offer," and a putative "Post-Waiver Class" proposed to be represented by Luckey which would include "all current and future people whom the MCAO has charged and assigned to Maricopa County's EDCs . . . who have waived their preliminary and/or rejected their initial plea offer."  (Doc. 1, ¶ 103)

As Adel fully explains in her Motion to Dismiss, Luckey's and Calhoun's claims must be dismissed with prejudice based on *Younger* abstention.  (Doc. 25, Argument, § I) *See Younger*, 401 U.S. 37; *Samuels v. Mackell*, 401 U.S. 66 (1971).  Consistent with *Younger*, Luckey and Calhoun cannot maintain their claims in this Court whether individually, as putative class representatives, or as putative class members.   Further, per Plaintiffs' proposed class definitions, the putative class members are or will be criminal defendants litigating criminal charges in pending state criminal court proceedings.   The putative class members' claims for declaratory judgments and injunctive relief (Doc. 1, ¶¶ 142 – 145)

would have the practical effect of interfering with the plea-bargaining process, waivers of preliminary hearing, plea agreements and judicial orders under Arizona Rule of Criminal Procedure 17, judicial orders accepting and entering pleas and waivers, judicial orders adjudicating convictions and imposing sentencings based on those pleas, and judicial processes and orders on review of motions to withdraw a plea or to restate a plea—among many other disruptive consequences to thousands of putative class members' state criminal court cases which proceed through EDC. *See, e.g.*, *Miller v. County of Nassau*, 467 F.Supp.2d 308, 317 – 318 (E.D. N.Y. 2006) (*Younger* dismissal where criminal defendants' claims arose out of district attorney's plea policy). The State of Arizona has an important interest in enforcing its criminal laws and maintaining the integrity of those state criminal court proceedings, *see Kelly v. Robinson*, 479 U.S. 36, 49 (1986), and the putative class members would have adequate opportunity to raise constitutional challenges in those proceedings, *see We Are America v. Maricopa County Board of Supervisors*, 386 Fed.Appx. 726, 727 (9ᵗʰ Cir. 2010); *see also* Doc. 25, Background, § II. Arizona appellate courts regularly consider criminal defendants' constitutional challenges to the prosecution's plea bargaining. *See, e.g., State v. Morse*, 617 P.2d 1141, 1147 (Ariz. 1980); *State v. Caperon*, 728 P.2d 296, 298 (Ariz. Ct. App. 1986); *State v. Felix*, 737 P.2d 393, 394–96 (Ariz. Ct. App. 1986). Accordingly, pursuant to *Younger*, the putative class claims cannot proceed in this Court. *See Younger*, 401 U.S. 37; *Samuels*, 401 U.S. 66; *see* Doc. 25, Argument, § I. The class certification request therefore should be denied.

## B. Plaintiffs' claims fail on the merits as a matter of law.

As detailed in Defendant's Motion to Dismiss, Plaintiffs' claims must be dismissed with prejudice, because they fail on the merits under almost fifty years of federal jurisprudence. (Doc. 25, Argument, § III). Whether asserted individually, as putative class representatives, or as putative class members, these claims must be dismissed because Adel's plea policy and practice in EDC do not violate Plaintiffs' rights under the U.S.

1   Constitution's Sixth Amendment and Fourteenth Amendment, as a matter of law. The

2   Court therefore should deny Plaintiffs' request seeking class certification.

**II.      Luckey and Calhoun fail to meet their burden under Rule 23.**

3

4       Plaintiffs do not carry their burden of affirmatively demonstrating "through

5   evidentiary proof" the "commonality," "typicality" and "adequacy" requirements of Rule

6   23(a)(2) – (4).[1]  Plaintiffs' Rule 23 Motion thus fails.

7       Plaintiffs do not present any evidence in support of their request to certify a class.

8   They only refer this Court back to the Complaint—without even citing the Complaint's

9   relevant paragraphs. (Doc. 5 at 2–5).  Plaintiffs' approach would reduce Rule 23 to a mere

10  pleading standard—an approach expressly at odds with U.S. Supreme Court precedent. *See*

11  *supra*.  And although Plaintiffs vaguely refer to "supporting documents," (*id.* at 4, n.1), they

12  fail to specifically identify and explain what those documents are or how they "prove that

13  there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality

14  of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast*

15  *Corp.*, 569 U.S. at 33 (citing *Wal-Mart*).  Simply put, this Court cannot conduct the required

16  "rigorous analysis to determine whether" Plaintiffs have met their burden in absence of any

17  evidentiary support. *See Zinser*, 253 F.3d at 1186 (internal quotation marks omitted).  This

18  Court should deny Plaintiffs Luckey and Calhoun's Rule 23 Motion on this basis. *See, e.g.*,

19  *Church v. Accretive Health, Inc.*, 299 F.R.D. 676, 679 (S.D. Ala. 2014) ("Plaintiff's

20  straight-out-of-the-chute Rule 23 Motion is highly unlikely to advance her cause one iota,

21  but is virtually certain to impose administrative costs, unnecessary distractions, and an

22  unhelpful drag on efficiency and judicial economy," and denying Rule 23 motion "as

23  premature and lacking specific factual or legal support"); *Beaudry v. Telecheck Servs., Inc.*,

24

25

26  _____

27  [1]  Adel does not oppose the Rule 23(a)(1) numerosity allegation because it is not disputed
    that a large number of criminal defendants receive initial plea offers in EDC.  (*See also* Doc.
    25, Background, § II)

28

No. 3:07-CV-0842, 2010 WL 2901781, at *2 (M.D. Tenn. July 20, 2010) (noting "[t]ypically, courts dismiss premature [Rule 23] motions," and collecting cases).

Plaintiffs also fail to cite a single case that addresses the crux of their Complaint—the constitutionality of plea-bargaining in EDC.  Plaintiffs instead supply this Court with generic case law on Rule 23 motions without tying it to the specifics of this case.  (*See* Doc. 5 at 6–15).  This approach is at odds with federal court precedent and practice.  And—combined with Plaintiffs' dearth of facts—it prevents this Court from performing the required "rigorous analysis" necessary to grant Plaintiffs' Rule 23 Motion.  "Frequently that 'rigorous analysis,'" the U.S. Supreme Court has explained, "will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.  The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *see also Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) ("In this case, as in all class actions, commonality cannot be determined without a precise understanding of the nature of the underlying claims.").

For example, in *Wal-Mart* the U.S. Supreme Court addressed whether the evidence produced by plaintiffs satisfied the commonality prong by reference to the law governing Title VII employment discrimination claims.  *See* 564 U.S. at 351–60 (concluding evidence did not establish commonality).  Similarly, in *Parsons*, the Ninth Circuit compared the case law on unconstitutional conditions of confinement specific to medical care with evidence produced by the plaintiffs—"four  thorough and unrebutted expert reports, the detailed allegations in the 74-page complaint, hundreds of internal ADC documents, and declarations by the named plaintiffs"—to evaluate the commonality prong.  *See* 754 F.3d at 676–85 (concluding evidence did establish commonality).  And, as a final example, in *Mix v. Asurion Ins. Servs. Inc.*, this Court evaluated commonality, typicality, and adequacy of representation by reference to the federal Fair Credit Reporting Act. No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *8 (D. Ariz. Dec. 14, 2016) (concluding plaintiff did not establish commonality for one class or typicality and adequacy for another class).  Plaintiffs

have made no effort to ground their Rule 23 Motion in the case law of prosecutorial vindictiveness, plea-bargaining, or state-created rights.  Their unsupported arguments in their "Background" section are wholly insufficient.

**Commonality:**  Plaintiffs' reliance on *Armstrong v. Davis* to establish commonality is misplaced. 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).  *Armstrong* concluded that in a civil rights suit, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."  *Id.* But Plaintiffs base their allegations on the wrong MCAO policy. (Doc. 25, Background, § I).  Plaintiffs do not establish that the alleged "Retaliation Policy" <u>in fact</u> was in effect for Luckey and Calhoun, or for putative class members in the putative "Pre-Waiver Class" or putative "Post-Waiver Class," who according to Plaintiffs' proposed class definitions must be current criminal defendants in EDC or future criminal defendants in EDC as of the date of the Complaint, i.e., July 7, 2021. (Doc. 1, ¶ 103).  To the contrary, the evidence presented by Adel shows that the alleged "Retaliation Policy" has not been MCAO's plea policy since August 13, 2020, when current plea policy 7.1 ("Applicable Plea Policy") was adopted and made applicable to all court settings, including EDC.  This occurred almost a year before the filing of the Complaint (and Motion to Certify).  (Doc. 25, Background, § I; Ex. 2 hereto; Kalish Dec, ¶¶ 3, 5).

In relevant part, the Applicable Plea Policy provides:

> Plea agreements make it possible to manage the high volume of cases in the criminal system while also holding offenders accountable. MCAO's goal in extending plea offers is to strike the balance between efficiency and accountability. To achieve this goal, the assigned DCA must consider all relevant facts and circumstances known about the offense and the defendant when the plea is offered. . . .Given the number of variables between individual defendants and the facts unique to each case, it is not possible to handle every charge or every circumstance identically. While this chapter will help promote consistency, each DCA is expected to critically weigh the circumstances of each case to determine an appropriate initial offer. DCAs should engage in meaningful negotiations which includes discussing the case with defense counsel to learn as much as possible about the defendant.

. . .

> If the defendant rejects a plea offer or if the plea offer expires, the presumption is that any future offer will be harsher in order to encourage cases to settle in an efficient manner. This policy does not prohibit the assigned DCA from making a better offer if the facts and circumstances relied upon for previous offers have materially changes or it is otherwise in the interest of justice.

(Doc. 25, Background, § I; Ex. 2 at 1, 6, § J, ¶ 6, hereto; Kalish Dec, ¶ 4). The Applicable Plea Policy is substantively different from the alleged "Retaliation Policy." It does not contain the "substantially harsher" or "blanket application" language of the alleged "Retaliation Policy" challenged by Plaintiffs. The Applicable Plea Policy provides for prosecutorial discretion in plea bargaining, promotes flexibility and consideration of individual circumstances in individual cases, and is not a blanket, one-size-fits-all plea policy.[2] To the contrary, under the Applicable Plea Policy, whether a plea offer is made post-arraignment and if so, the terms and conditions of the plea offer, will vary based on prosecutors' critical assessment of individual defendants' cases. (Doc. 25, Background, § I; Ex. 2 at 1, 6, § J, ¶ 6, hereto; Kalish Dec., ¶¶ 4, 6)

There could not be a common answer to Plaintiffs' allegation of a "common question of fact" regarding "how prosecutors carry out" plea policy (Doc. 1, ¶ 108) as to putative class members currently in EDC or who will be in EDC in the future as of July 7, 2021 (Doc. 1, ¶ 103), because the Applicable Plea Policy expressly provides for individualized plea-bargaining in individual EDC cases which is not reduceable to a common answer. (Doc. 25, Background, § I; Ex. 2 at 1, 6, § J, ¶ 6, hereto; Kalish Dec., ¶¶ 3 - 6) MCAO's current plea policies are purposefully designed to be less rigid and to give more discretion to the assigned attorney to make a just offer. The Applicable Plea Policy reads "each DCA is expected to critically weigh the circumstances of each case to determine an appropriate initial offer." In that spirit, assigned attorneys are allowed to deviate from presumptions in the plea policies without supervisor approval. (Ex. 2 at 1; Kalish Dec., ¶ 6) As a result,

---

[2] In their Complaint, Plaintiffs favorably contrasted similar discretionary language in prior plea policy 7.1, as compared to the "Retaliatory Policy." (Doc. 1, ¶¶ 39, 40)

1   there can be a wide variety of outcomes for a defendant who rejects a plea offer made in

2   EDC, or who simply fails to enter into the plea at the EDC.  (Kalish Dec., ¶¶ 7 - 9) Many

3   defendants who agree to waive the preliminary hearing in EDC, but who do not make a

4   decision to accept or reject the plea agreement in EDC, have the opportunity to enter into

5   the same plea post-arraignment.  (Kalish Dec., ¶ 8) For defendants who make the decision

6   to reject the plea offer in EDC, there are varying plea offer scenarios which may occur post-

7   arraignment.  Many defendants who reject an EDC offer may receive a harsher offer post-

8   arraignment.  A sizeable number who reject an EDC offer may receive the same offer post-

9   arraignment.  Some who reject an EDC offer may get a more lenient offer post-arraignment,

10  based on mitigation or the trial prosecutor reviewing discovery that was not available at the

11  time of charging.  Others who reject an EDC offer may not receive a plea offer post-

12  arraignment, at all. (Kalish Dec., ¶ 9) For example, the evidence shows that Luckey received

13  an initial plea offer in EDC on February 1, 2021.  He did not accept or reject the initial plea

14  offer, but he did waive the preliminary hearing.  The prosecution agreed to keep the same

15  plea offer open post-arraignment until the IPTC.  As of the date of this filing, Luckey has

16  the same plea offer in the post-arraignment setting as he had in EDC.  (Doc. 25, Background,

17  § III; Kalish Dec., ¶ 10)

18      Plaintiffs' allegations of "common questions of law" merely re-stating conclusory

19  contentions of their theory of alleged liability (*i.e.*, whether the plea policy in EDC "violates

20  people's Sixth and Fourteenth Amendment rights" and "coerces people into foregoing their

21  rights," Doc. 1, ¶¶ 108, 109) are insufficient to establish the "commonality" requirement,

22  as explained by the U.S. Supreme Court in rejecting similar allegations in *Wal-Mart*.  *Wal-*

23  *Mart*, at 349 – 350.

24      Plaintiffs' allegation of a "common question" for the "Post-Waiver Class" "if and

25  when MCAO delivers discovery even after a preliminary hearing waiver" (Doc. 1, ¶ 109)

26  is patently vague and not fairly intelligible, and is substantively disconnected from

27  Plaintiffs' putative class claims alleging constitutional violations, because the U.S. Supreme

28  Court already has established that a defendant does not have a <u>constitutional</u> right to

disclosure of information before entering into a plea bargain.  *U.S. v. Ruiz*, 536 U.S. 622, 625 (2002).  Moreover, the allegation is not logically related to the Plaintiffs' complaint. In essence they claim that the "Post-Waiver Class" is harmed because MCAO makes or threatens "to make plea offers harsher in response to people exercising their right to a preliminary hearing and/or trial…"  Complaint ¶ 109.  Whether MCAO complies with post-arraignment discovery requirements is irrelevant to that question.  In Arizona, what and when the prosecution must disclose in the post-arraignment setting is governed by Ariz. R. Crim. P.  Rules 15.1, 15.6 and 15.8., established by the Arizona Supreme Court, <u>not EDC plea policy</u> – another substantive disconnection to Plaintiffs' theories. *See Rivera-Longoria v. Slayton, ex rel. County of Coconino*, 264 P.3d 866, 867 – 868 (Ariz. 2011) (in banc) (describing state's disclosure obligations post-arraignment); ARIZ. CONST. art. VI, § 5 ("The Supreme Court shall have: ... Power to make rules relative to all procedural matters in any court.").  Moreover, there cannot be a common answer to what and when the prosecution makes post-arraignment disclosures, due to the variation in the timing and availability of additional evidence to be disclosed post-arraignment in individual criminal defendants' court cases.  Further, not every EDC defendant who waives the preliminary hearing must receive a plea offer post-arraignment.   This is lawfully within the prosecution's discretion.  *Rivera-Longoria*, 264 P.3d at 869 ("The prosecution retains discretion to determine whether to make a plea offer, the terms of any offer, the length of time an offer will remain open, and the other particulars of plea bargaining.').  For those who do receive a plea offer post-arraignment, the application, timing and extent of Rule 15.8 disclosure will vary depending on various individualized factors, such as making an open-ended plea offer (not subject to Rule 15.8), differences in plea deadlines set by the prosecution, what Rule 15.1(b) disclosure material is in the prosecution's possession or control before expiration of plea deadlines, and whether the plea offer is rejected by the individual defendant before expiration of the plea deadline (so Rule 15.8 no longer applies). *See id*. at 868 – 70.  Thus, the above-quoted "common question" does not result in a common answer. *See Wal-Mart*, 564 U.S. at 350 (common question must generate common

1  answer which will "resolve an issue that is central to the validity of each one of the claims
2  in one stroke").

3      As shown, the text of the Applicable Plea Policy belies any argument that the
4  experiences of Luckey and Calhoun in EDC could satisfy the requirements of commonality.
5  Similarly, individual criminal defendants' reasons for decisions in the plea-bargaining
6  process necessarily vary based on individual circumstances.  *Cf. Bordenkircher v. Hayes*,
7  434 U.S. 357, 363 (1978) ("Plea bargaining flows from the mutuality of advantage to
8  defendants and prosecutors, each with his own reasons for wanting to avoid trial.").  In sum,
9  because the Applicable Plea Policy provides prosecutors with discretion to decide how they
10  will plea bargain in individual cases based upon individual facts and circumstances in those
11  cases, there is not the required "glue" necessary to establish that every prosecutor will plea-
12  bargain in a common way resulting in a common (alleged) harm to every criminal defendant
13  who currently is in EDC or will be in EDC in the future as of July, 2021, *i.e.*, putative class
14  members (Doc. 1, ¶ 103), thereby disproving Plaintiffs' allegations of "commonality." *Wal-*
15  *Mart*, at 352, 354 – 359 (plaintiffs failed to provide "convincing proof" of companywide
16  discrimination based on company's discretionary policy, thereby concluding plaintiffs did
17  not establish "commonality;" company's policy allowing discretion by local supervisors
18  "on its face . . . is just the opposite of a uniform practice that would provide the commonality
19  needed for a class action;  it is a policy *against having* uniform employment practices" (at
20  355)) (emphasis in original).

21      **Typicality**:  Further, nothing in Plaintiffs' Complaint or their proposed Document 6-
22  1 Exhibits shows "in fact" that Plaintiffs Luckey and Calhoun had experiences typical of
23  the putative classes. *See Comcast Corp.*, 569 U.S. at 33.  Plaintiffs' allegations of typicality
24  are wholly conclusory and insufficient.  (Doc. 1, ¶ 110; Doc. 5 at 10 – 11).  Plaintiffs did
25  not submit any public records or their own declarations supporting typicality. *Cf. Parsons*,
26  754 F.3d at 676–85.  Likewise, they did not present the <u>actual</u> plea offers made to Luckey
27  and Calhoun, the <u>actual</u> waiver signed by Luckey and his criminal defense counsel, the
28  <u>actual</u> email correspondence between Luckey's and Calhoun's criminal defense counsel and

1   prosecutors regarding plea bargaining in their state criminal court cases, or the <u>actual</u>

2   discovery made by the prosecution to Luckey and Calhoun in EDC.  As shown below, none

3   of those records show that the alleged "Retaliation Policy" was applied to Luckey or

4   Calhoun.

5        The evidence which Adel has supplied this Court show that Luckey's and Calhoun's

6   <u>actual</u> experiences in EDC do not match the alleged experiences of the putative classes—

7   meaning Luckey and Calhoun fail to meet typicality under Rule 23(a). Plaintiffs rely on

8   plea bargaining under the alleged "Retaliation Policy."  But the evidence shows that Luckey

9   and Calhoun <u>actually</u> received their initial plea offers on February 1, 2021 and May 7, 2021,

10  respectively, which was many months after the alleged "Retaliation Policy" was replaced

11  by the Applicable Plea Policy. (Doc. 25, Background, §§ I, III, IV; Ex. 2, Ex. 5 at MCAO-

12  0048-55 Ex. 8I, Ex. 10, Ex. 11 at MCAO-0190, hereto; Kalish Dec., ¶¶ 3 - 10).  Plaintiffs

13  allege that plea offer forms are "emblazoned" with a "threat" of "substantially harsher"

14  subsequent plea offers under the alleged "Retaliation Policy."  (Doc. 1, ¶ 48; *see also id.*,

15  ¶¶ 4, 49) But Plaintiffs do not link such plea offer forms to Luckey and Calhoun.  Instead,

16  Luckey and Calhoun's <u>actual</u> plea offer forms do not contain this language.  (*See* Doc. 25,

17  Background, §§ III, IV; Ex. 5 at MCAO-0048-88, Ex. 10, hereto).  Plaintiffs quote a

18  redacted email including the "substantially harsher" language which Plaintiffs relate to the

19  alleged "Retaliation Policy."  (Doc. 1, ¶ 50; *see also* Doc. 6-1, Ex. 1 at Ex. 1(c)) But again,

20  they do not establish any connection to Luckey or Calhoun.  The evidence shows that the

21  <u>actual</u> emails pertaining to plea-bargaining exchanged between the prosecution and criminal

22  defense counsel in Luckey's and Calhoun's EDC cases do not have the alleged "Retaliation

23  Policy" language. (Doc. 25, Background, §§ III, IV; Ex. 6A, Ex. 11, hereto).  Plaintiffs

24  contend the required Rule 15.1(a)(1) disclosure in EDC is part of the alleged "Retaliation

25  Policy" (even though such disclosure is governed by the Arizona Rules of Criminal

26  Procedure, not MCAO plea policy).  (Doc. 1, ¶ 53) But the evidence shows that prosecutors

27  exceeded the required Rule 15.1(a)(1) disclosure in EDC when making the <u>actual</u> disclosure

28  Luckey's and Calhoun's EDC cases.  (Doc. 25, Background, §§ III, IV; Ex. 5 at MCAO-

0045-46, 58 – 110, Ex. 9, hereto).  Plaintiffs assert that prosecutors push and rush criminal defendants into plea decisions and/or waiver decisions in EDC.  (Doc. 1, ¶ 75) But the evidence shows that Luckey and Calhoun <u>actually</u> had approximately eight weeks and going-on more than twelve weeks, respectively, to consider their plea offers in EDC, and both have the same plea offers open as of this filing.  (Doc. 25, Background, §§ III, IV, Ex. 4F – 4G, Ex. 8I – 8J, hereto).  So far as Luckey's <u>actual</u> waiver, the video record of Luckey's EDC hearing shows that, after eight weeks of consideration, Luckey and his criminal defense counsel appeared at the EDC hearing, raised certain discovery issues, were asked by the judge whether Luckey agreed to waive, and Luckey chose to waive.  The video record reflects no "threats," "coercion," or interference by the prosecution in Luckey's and his criminal defense counsel's participation in that hearing, their colloquy with the judge, or Luckey's waiver decision. The judge accepted Luckey's waiver.  (Doc. 14, Doc. 17, Ex. 1(f)) And Luckey's <u>actual</u> waiver agreement signed by Luckey and his criminal defense counsel states that Luckey knew and understood his rights and the consequences of waiver and his criminal defense counsel states "I have explained the significance of the preliminary hearing to the defendant, and consent to waiver of a preliminary hearing in this case." (Doc. 25, Background, § III; Ex. 4H, hereto)

To the extent the Court does not strike the Exhibits in Doc. 6-1, only one of the Exhibits specifically addresses Luckey and Calhoun – the proposed declaration of criminal defense attorney Edith Lucero, Doc. 6 – 1, Ex. 1.  Lucero never states that Luckey or Calhoun received plea offers with the "substantially harsher" language, nor could she truthfully so state, as the <u>actual</u> plea offers demonstrably do not contain such language.  She never states that the prosecutors failed to make the required EDC disclosures to Luckey and Calhoun, nor could she truthfully so state, because the prosecutors not only <u>actually</u> met their EDC disclosure obligations, rather they <u>actually</u> exceeded them in EDC.  She never states that Luckey and Calhoun did not have sufficient time to consider the plea offers, nor could she truthfully so state, because the state criminal court records of their cases show that each <u>actually</u> had multiple continuances allowing them months to consider the plea

offers.  She never states that Luckey did not have an opportunity to raise discovery issues with the judge at the EDC hearing, or that the judge refused to listen to those issues, or that Luckey failed to make his own decision with her assistance as his criminal defense counsel to waive the preliminary hearing, nor could she truthfully so state, because the recorded video of the hearing and Luckey's signed waiver <u>actually</u> refute any such contentions.

In sum, Plaintiffs fail to meet their burden to show Luckey's and Calhoun's experience was "typical" of the experience of putative class members allegedly subject to the alleged "Retaliation Policy."

**Adequacy**:  Plaintiffs also fail to present any evidence demonstrating that Luckey and Calhoun meet the "adequacy" requirement for class certification.  There is no factual basis to conclude that either would vigorously prosecute this case on behalf of the putative classes.  Indeed, neither of them presented their own declarations attempting to support their requests for appointment as putative class representatives.  And the fact that Calhoun (thus far) twice has failed to appear and twice has been the subject of a bench warrant for his arrest in his state criminal court proceeding (Doc. 25, Background, § IV; Ex. 8E, 8K, hereto) shows that he does not qualify as an "adequate" putative class representative in view of his flagrant and serial disregard for court orders and court proceedings.

## III.   Luckey and Calhoun Lack Standing to Serve as Class Representatives re:  EDC Defendants Who Have Rejected Initial Plea Offers and/or EDC Defendants Who Have Entered into Plea Agreements.

Plaintiffs seek to certify a putative "Post-Waiver Class" proposed to include "all current and future people whom the MCAO has charged and assigned to Maricopa County's EDCs . . . who have . . . rejected their initial plea offer."  (Doc. 1, ¶ 103) As of the date of the filing of their Complaint, as well as the filing of this Response, Luckey and Calhoun's initial plea offers remain open and were not rejected.   (Doc. 25, Background, §§ III, IV). They therefore do not have standing to serve as class representatives for "people whom the MCAO has charged and assigned to Maricopa County's EDCs . . . who have . . . rejected their initial plea offer."  *See Hawkins v. Comparet–Cassani,* 251 F.3d 1230, 1238 (9th Cir.2001) ("[a] named plaintiff cannot represent a class alleging constitutional claims that the named plaintiff does not have standing to raise*"); General Telephone Co. of Southwest*

15

*v. Falcon,* 457 U.S. 147, 156 (1982)  ("a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members").

Also, Plaintiffs request injunctive relief on behalf of the putative "Post-Waiver Class," enjoining "Defendant from asserting the  . . . plea agreement itself as a basis for opposing any class member's attempt to withdraw their . . . plea . . . and retaliating against any class member for seeking or winning such a withdrawal."  (Doc. 1, ¶ 145) This request is wholly disconnected from the proposed "Post-Waiver Class" class definition, which requires that the initial plea offer have been rejected.  (Doc. 1, ¶ 103) In other words, the proposed "Post-Waiver Class" definition does not include EDC defendants who have accepted their pleas and entered into plea agreements.  Layered on top of this unworkable disconnect is the fact neither Luckey or Calhoun have accepted their initial plea offers or entered into plea agreements of the date of the Complaint's filing or this Response's filing. Again, their plea offers remain open.  (Doc. 25, Background, §§ III, IV).  Luckey and Calhoun therefore do not have standing to serve as class representatives seeking injunctive relief on behalf of a putative class of EDC defendants who have accepted initial plea offers, have entered into plea agreements, and are attempting to withdraw from their plea agreements.  *See* cases, *supra*.

## IV.   The *Rooker-Feldman* Doctrine Bar Certain Putative Class Members' Requests for Injunctive Relief.

The *Rooker-Feldman* doctrine derives from two cases, which together hold that federal district courts lack subject-matter jurisdiction to hear the claims of a party seeking a "de facto appeal" from a final judgment of a state court. See *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In the Ninth Circuit, "A de facto appeal exists when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.'" *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) (citing *Noel v. Hall*, 341 F.3d at 1164).  "To determine whether an action functions as a de facto appeal, we 'pay close attention to the *relief* sought by the federal-court

plaintiff.'" *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) (citing *Bianchi v. Rylaarsdam,* 334 F.3d 895, 900 (9th Cir.2003). When a federal plaintiff alleges that a trial court committed an error, challenges the outcome of his state case, and seeks as his remedy relief from the state court judgment, it is a de factor appeal, even if the plaintiff tries to couch his complaint as a constitutional challenge of a statute. *Cooper*, 704 F.3d at 781.

The Complaint requests injunctive relief for the "Post-Waiver Class," enjoining "Defendant from asserting the  . . . plea agreement itself as a basis for opposing any class member's attempt to withdraw their . . . plea . . . and retaliating against any class member for seeking or winning such a withdrawal." (Doc. 1, ¶ 145) As discussed *supra*, the "Post-Waiver Class" is not defined to include persons who have accepted a plea agreement.  But even if it could be read to include such persons, the above-quoted injunctive relief request is barred by *Rooker-Feldman*.  One of the duties of the state court is to ensure that a criminal defendant's plea is knowing, intelligent and voluntary.  Ariz. R. Crim. P. 17.  Upon making its Rule 17 determination, the state court accepts the plea and adjudicates the conviction. The criminal defendant then has the opportunity to seek review of the plea through the post-conviction review process under Ariz. R. Crim. P. 33.1(a).  (Doc. 25, Background, § II)  In seeking this Court's review of "Post-Waiver Class" pleas to re-determine whether the plea was knowing, intelligent and voluntary as found by the state trial court, or whether it was "coerced" via the alleged "Retaliation Policy" as contended by Plaintiffs, and in seeking to impose a federal court injunction upon the state court's review process under Rule 33.1(a), these "Post-Waiver Class" claims and requests for relief constitute an impermissible de facto appeal to this Court challenging the validity of the state court's orders accepting pleas and adjudicating convictions in state court, prohibited by *Rooker-Feldman*. Accordingly, this Court must abstain and deny Plaintiffs' request for class certification of these "Post-Waiver Class" claims and requests for relief.

## Conclusion

For these reasons, this Court should deny Plaintiffs' Rule 23 Motion.

**RESPECTFULLY SUBMITTED** this 27<u>th</u> day of August 2021.

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

By <u>/s/ *Ann Thompson Uglietta*</u>
    ANN THOMPSON UGLIETTA
    CHARLES TRULLINGER
    JOSEPH I. VIGIL
    Deputy County Attorneys
    *Attorneys for Allister Adel Maricopa County Attorney*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2021, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable G. Murray Snow
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 622
401 West Washington Street
Phoenix, Arizona 85003

Honorable Eileen S. Willett
Magistrate Judge
United States District Court
Sandra Day O'Connor U. S. Courthouse, Suite 325
401 West Washington Street
Phoenix, Arizona 85003

Somil Trivedi (pro hac vice application forthcoming)
American Civil Liberties Union Foundation
Criminal Law Reform Project
915 15th St., NW
Washington, DC 20005
strivedi@aclu.org

Jared G. Keenan (027068)
Victoria Lopez (330042)
American Civil Liberties Union Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
jkeenan@acluaz.org
vlopez@acluaz.org
*Attorneys for Plaintiffs*

/s/ S. Rojas