ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY:    ANN THOMPSON UGLIETTA (013696)
       CHARLES TRULLINGER (018936)
       JOSEPH I. VIGIL (018677)
       Deputy County Attorneys
       uglietta@mcao.maricopa.gov
       trullinc@mcao.maricopa.gov
       vigilj@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Allister Adel Maricopa
County Attorney

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samuel Luckey and Aaron Dromiack, on behalf of themselves and those similarly situated, and,<br><br>Arizona Attorneys for Criminal Justice,<br><br>Plaintiffs,<br><br>v.<br><br>Allister Adel, in her official capacity as County Attorney for Maricopa County<br><br>Defendants. | No. CV21-01168-PHX-GMS (ESW)<br><br><br>**DEFENDANT MARICOPA COUNTY ATTORNEY ALLISTER ADEL'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PER RULES 12(b)(1) AND 12(b)(6), FED. R. CIV. P.**<br><br>**[DOC. 30]** |

## Table of Contents

**MEMORANDUM OF POINTS AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . .1

**Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**Legal Standard** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2**

    **I.**      **MCAO Plea Policy** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2**

    **II.**    **Relevant Arizona criminal court processes** . . . . . . . . . . . . . . . . . . . . .**4**

    **III.**   **Luckey's pending state court criminal case** . . . . . . . . . . . . . . . . . . . . .**6**

    **IV.**   **Dromiack's pending state court criminal case** . . . . . . . . . . . . . . . . . . .**9**

    **V.**     **This litigation.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

    **I.**      **Luckey and Dromiack's claims must be dismissed under** *Younger*. . .10

    **II.**    **AACJ lacks standing to sue.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. **12**

        **A. AACJ lacks "organizational/associational" standing.** . . . . . . . . . . **12**

        **B. AACJ lacks "third party" standing.** . . . . . . . . . . . . . . . . . . . . . . . . .**17**

    **III.**   **Plaintiffs' claims fail as a matter of law.** . . . . . . . . . . . . . . . . . . . . . ... **17**

    **IV.**   **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

Pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., Defendant Maricopa County Attorney Allister Adel ("Adel") moves to dismiss with prejudice Plaintiffs' First Amended Complaint ("FAC") [Doc. 30] because: (1) the claims asserted by Plaintiffs Luckey and Dromiack are barred by the abstention doctrine established by *Younger v. Harris*, 401 U.S. 37 (1971); (2) Plaintiff Arizona Attorneys for Criminal Justice ("AACJ") lacks standing to pursue its claims; and (3) as a matter of law, Adel's plea policy and practice in Early Disposition Court, Maricopa County Superior Court ("EDC"), do not violate Plaintiffs' rights under the U.S. Constitution's Sixth Amendment and Fourteenth Amendment.

Consistent with LRCiv 12.1(c), Adel's undersigned counsel certify that, prior to filing this Motion to Dismiss, they met and conferred with Plaintiffs' counsel regarding the FAC's defects via correspondence and conference call. Because the parties did not resolve these defects, Adel files this Motion to Dismiss. The Motion is supported by the following Memorandum of Points and Authorities.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

"[B]y tolerating and encouraging the negotiation of pleas, [the Supreme Court] has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). At its core, Plaintiffs' lawsuit refuses to acknowledge this "simple reality," seeking to rewind decades' worth of Supreme Court precedent and criminal law practice in the State of Arizona.

Luckey and Dromiack are criminal defendants in state criminal court; they seek this Court's review and imposition of declaratory relief and injunctive relief arising out of plea-bargaining between criminal defendants, represented by criminal defense counsel, and the state, represented by state's counsel Maricopa County Attorney's Office ("MCAO"), in

---

[1]   Adel also requests that this Court take judicial notice and consider Exhibits 1 – 13 (including sub-part Exhibits) attached here for the reasons set forth in her concurrently filed Motion for Judicial Notice (Doc. 33).

EDC. This Court need not reach the merits of their claims because, as defendants in on-going state criminal court proceedings, their claims are barred by *Younger* abstention. Similarly, this Court need not reach the merits of AACJ's claims which seek declaratory relief only, because AACJ lacks standing.

Even if this Court concludes that it has authority to hear the merits, Plaintiffs' claims fail. Simply put, there is nothing unconstitutional about prosecutors offering "harsher," "presumptively harsher," or "substantially harsher" plea deals after a criminal defendant rejects a more lenient offer. This Court should reject Plaintiffs' attempt to upend clearly established law recognizing the constitutional "give and take" of plea-bargaining and dismiss this matter with prejudice. *See Bordenkircher*, 434 U.S. at 363.

**Legal Standard**

Rule 12(b)(1), Fed. R. Civ. P., allows a party to move to dismiss a complaint for lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citation omitted).

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The court is not required to accept the truth of legal conclusions or fact allegations that contradict "matters properly subject to judicial notice." *See id.*

**Background**

**I.    MCAO Plea Policy.**

Plaintiffs rely in part on the following language in prior MCAO plea policy 7.2 ("Outdated Plea Policy"), which previously applied to EDC: "If the defendant rejected a

2

previous plea offer, any new plea offer must be substantially harsher." (Doc. 30, ¶¶ 1, 8, 11, 16, 42, 64, 66, 97, 102, 107, 75, 81; *see also* Ex. 1 at 2, § A, ¶ 2).

On August 13, 2020—nearly one year before Plaintiffs filed this suit—that language was deleted and replaced by the language in current MCAO plea policy 7.1 ("Applicable Plea Policy"). The Applicable Plea Policy applies to plea offers made in all court settings, including EDC. In relevant part, the Applicable Plea Policy states:

> Plea agreements make it possible to manage the high volume of cases in the criminal system while also holding offenders accountable. MCAO's goal in extending plea offers is to strike the balance between efficiency and accountability. To achieve this goal, the assigned DCA must consider all relevant facts and circumstances known about the offense and the defendant when the plea is offered. . . .Given the number of variables between individual defendants and the facts unique to each case, it is not possible to handle every charge or every circumstance identically. While this chapter will help promote consistency, each DCA is expected to critically weigh the circumstances of each case to determine an appropriate initial offer. DCAs should engage in meaningful negotiations which includes discussing the case with defense counsel to learn as much as possible about the defendant.[2]
>
> . . .
>
> If the defendant rejects a plea offer or if the plea offer expires, the presumption is that any future offer will be harsher in order to encourage cases to settle in an efficient manner. This policy does not prohibit the assigned DCA from making a better offer if the facts and circumstances relied upon for previous offers have materially changes or it is otherwise in the interest of justice.

(Ex. 2 at 1, 6, § J, ¶ 6). The Applicable Plea Policy was publicly available to Plaintiffs on MCAO's public website beginning August 17, 2020.[3]

The Complaint quotes two partial plea offer forms and two partial emails between prosecutors and a criminal defense attorney regarding plea bargaining in EDC. (Doc. 30, ¶¶ 4, 52, 53, 55). These documents are not connected to Luckey or Dromiack's EDC cases. (*Compare* Ex. 5, Ex. 5A, Ex. 6, Ex. 7, Ex. 12, Ex. 12A, Ex. 13). On July 26, 2021, MCAO

---

2   Plaintiffs favorably cite this language in Policy 7.1 (*See* Doc. 30, ¶ 43).

3   (*See* Doc. 30, ¶ 42); *see also* MCAO, Prosecution Policies and Procedures, https://www.maricopacountyattorney.org/437/Prosecution-Policies.

replaced all plea offer forms to make them consistent with the Applicable Plea Policy.

**II.      Relevant Arizona criminal court processes.**

In Arizona, a felony case can begin one of two ways: the State obtains an indictment or proceeds by way of preliminary hearing. Ariz. R. Crim. P. 2.2. If the State wishes to proceed by way of preliminary hearing, it must file a complaint "in a limited jurisdiction court, or in superior court with permission of a judge of such court." Ariz. R. Crim. P. 2.2(b). In Maricopa County, the Superior Court allows the filing of such complaints into the Early Disposition Court (EDC). (Ex. 3).[4]

An arrested defendant must be taken before a magistrate for an initial appearance within twenty-four hours of the arrest. Ariz. R. Crim. P. 4.1(a). At the initial appearance, the magistrate, among other things, appoints defense counsel, makes a preliminary finding of probable cause based upon the police officer's Form IV statement, and sets release conditions. Ariz. R. Crim. P. 4.2. The State has forty-eight hours from the initial appearance to file a complaint; otherwise, the person must be released from custody. Ariz. R. Crim. P. 4.1(b). If a complaint is timely filed, a preliminary hearing must be held within ten days of the initial appearance if the person remains in custody, or twenty days if they have been released. Ariz. R. Crim. P. 5.1(a). The preliminary hearing date is set at the initial appearance. Ariz. R. Crim. P. 4.2(b)(2). The State may also obtain a Grand Jury indictment before the deadlines for a preliminary hearing. If that occurs, the preliminary hearing is vacated, and an arraignment is set. Ariz. R. Crim. P. 14(a).

If the defendant is not arrested, the State may still obtain a Grand Jury indictment or file a complaint into the EDC. Ariz. R. Crim. P. 2.2. The case will be set for an initial appearance in EDC and proceeds as described above.

---

[4]   The Maricopa County Superior Court established EDC in 1997. (Ex. 3A). The Superior Court later ordered all felony cases be filed into Superior Court Regional Court Centers ("RCC"). (Ex. 3B) At some point, drug cases went to Expedited Drug Court (known as "EDC") and non-drug cases stayed in Superior Court. During the pandemic, the Superior Court administratively combined the RCC and EDC calendars into a single Early Disposition Court. (Ex. 3) The terms EDC and RCC continue to be used interchangeably, and both generally refer to the pre-arraignment felony courts.

4

If a case goes to a preliminary hearing, the State must disclose all police reports regarding the charged offense and any expert reports in its possession at the time of charging. Ariz. R. Crim. P. 15.1(a). If a case goes to Grand Jury, then initial discovery is made at the arraignment. Ariz. R. Crim. P. 15.1(a)(2). Once probable cause is established, either by Grand Jury or Preliminary Hearing, other disclosure obligations in Rule 15.1 apply. Typically, that disclosure must be made within thirty days of the arraignment. Ariz. R. Crim. P. 15.1(c). The arraignment is only held after probable cause has been found at the preliminary hearing (or by Grand Jury). Ariz. R. Crim. P. 14.2(a).

There is no requirement in the rules or Constitution that the State offer a plea. *See State v. Morse*, 617 P.2d 1141, 1147–48 (Ariz. 1980). Moreover, the State may refuse to plea bargain so long as it has "some valid reason" and no invidious discrimination is involved. *See State v. Martin*, 679 P.2d 489, 504 (Ariz. 1984). At all stages of the proceedings, it is entirely discretionary whether a plea is offered. *See Morse*, 617 P.2d at 1148.

If the defendant accepts the plea offer in EDC, then the parties will enter into the plea agreement. *See* Ariz. R. Crim. P. 17. If the plea is to a misdemeanor offense, it is a "plea agreement." If the plea includes a guilty plea to a felony, then the defendant enters into a "Waiver with Plea." The "waiver" refers to the finding of probable cause. Ariz. R. Crim. P. 5.1(b). The "Waiver with Plea" means the defendant waives the probable cause finding, gets arraigned, and goes to sentencing. *Id*. After the defendant enters into a plea, the defendant, defense counsel, and prosecutor must sign and file it with the Court. Ariz. R. Crim. P. 17.4(b). The Court "may accept the plea of guilty or no contest if the defendant enters the plea voluntarily and intelligently." Ariz. R. Crim. P. 17.1. To make this determination, the Court "must" follow the procedures set forth in Rules 17.2 through 17.4, including personally addressing the defendant, informing the defendant of their rights and that they are forgoing those rights, and advising of the possible range of sentencing for the actual charges. Ariz. R. Crim. P. 17.2(a), 17.4(c). Upon making this inquiry, the Court must either accept or reject the plea. Ariz. R. Crim. P. 17.4(d), (e). The Court can permit a defendant to withdraw from the plea "if it is necessary to correct a manifest injustice." Ariz. R. Crim. P. 17.5.

If a defendant rejects a plea offer made in EDC, the defendant can either waive a probable cause determination (straight waiver) or proceed to a preliminary hearing. Ariz. R. Crim. P. 5.1. If the defendant "straight waives" then the case goes to arraignment. Ariz. R. Crim. P. 14.2. If the defendant proceeds to a preliminary hearing, then there are two possible outcomes. If probable cause is found, the case proceeds to arraignment. Ariz. R. Crim. P. 14.2. If no probable cause is found, for whatever reason, the case is dismissed. Ariz. R. Crim. P. 5.4(d). If a defendant affirms the preliminary hearing, rejecting the plea offer, the State could obtain a Grand Jury indictment before the date of the preliminary hearing, which would obviate the need for a preliminary hearing, and the case would proceed to arraignment. Ariz. R. Crim. P. 12.6(c). That occurred much more frequently pre-pandemic. After an arraignment, Rule 16, Ariz. R. Crim. P., allows pre-trial motions, including motions to dismiss. Special action processes also are available in the pre-trial stage. *See* Ariz. R.P. Spec. Act. 1(a).

If a defendant is convicted during the process, the defendant retains appellate rights. If the defendant pleads guilty, whether in the EDC or post-arraignment, the defendant can challenge that plea, including on grounds that it violated the United States or Arizona Constitutions, by filing a post-conviction relief petition. Ariz. R. Crim. P. 17.2(a)(5), 33.1(a). If the defendant does not plead and is convicted after a jury trial, the defendant can make a direct appeal under A.R.S. § 13-4033; if an appeal is unsuccessful, the defendant can file a petition for post-conviction relief to make claims, including those of ineffective assistance of counsel under Rule 32.1(a), Ariz. R. Crim. P. There also are federal and state processes to petition for a writ of habeas corpus. 28 U.S.C. § 2254; A.R.S. §§ 13-4121, *et seq*.

## III.   Luckey's pending state court criminal case.

On January 22, 2021, Phoenix Police officers stopped a vehicle. The people in that vehicle told police that "Lucky" was selling drugs from apartment 2181 at 1106 W. Bell Road. The officers surveilled the apartment, then obtained and executed a search warrant on Luckey's apartment. Police found 11.5 grams of methamphetamine, 839 Fentanyl pills, $1,000 in cash, and an AR-15 semiautomatic rifle. The estimated street value of the drugs

was about $10,000. (*See* Ex. 4C). Luckey was arrested on January 28, 2021.

Luckey's criminal case is ongoing; Exhibit 4A contains the relevant criminal case docket as of the date of this filing. On February 1, 2021, a Direct Complaint was filed charging Luckey with two class 2 felonies, a class 4 felony, and a class 6 felony. (*See* Ex. 4B). His initial appearance was held, and a preliminary hearing set for February 5, 2021, a status conference for February 3, 2021, and the Court set a $10,000 cash only appearance bond. (*See* Ex. 4D). On February 1, 2021, the State's initial discovery packet was uploaded and provided to defense counsel. This packet included notification of Luckey's Criminal History, Incident Report (police report), Affidavit for Search Warrant, Search Warrant and Return of Search Warrant. (*See* Ex. 5 at MCAO0045–46, 58–110). The packet also included an initial plea offer offering Luckey to plead to three counts with a stipulated prison term of 2 to 5 years on one count, terminal disposition on another count, and supervised probation on another. One count would be dismissed. (*See* Ex. 5 at MCAO0048–55).

On February 3, 2021, Luckey's defense counsel moved to continue the preliminary hearing to review discovery. The State did not object and the hearing was continued to March 5, 2021. (*See* Ex. 4F). On February 11, 2021, defense counsel e-mailed the prosecutor stating she was "looking to SW [straight waive the preliminary hearing] at the next [status conference] on 03.05 to keep the RCC offer available until the IPTC [Initial Pretrial Conference]; please let me know otherwise." The DCA agreed. (*See* Ex. 6A at MCAO0115–16). On March 5, 2021, a second unopposed motion to continue was filed and granted. (*See* Ex. 4G). The Court reset the preliminary hearing for April 7, 2021 and status conference on April 2, 2021. (*Id.*). On March 10, 2021, defense counsel proposed an alternative plea, recognizing that in "RCC we get limited discovery." The prosecutor rejected the offer indicating he was "confident of being able to prove the drug charges at trial." The prosecutor confirmed that if Luckey straight waived the offer would remain open until the IPTC, but if he wanted to proceed with the preliminary hearing, the plea negotiations would be finished. (*See* Ex. 6A at MCAO0113).

At the April 2, 2021 status conference, Luckey and his defense counsel raised alleged

1   discovery issues with the EDC judge, who listened then asked if Luckey wanted to waive
2   the preliminary hearing. Luckey, in the presence of his counsel, stated that he agreed to
3   waive. (*See* Doc. 30, ¶¶ 86, 87; Doc. 14; Doc. 17, Ex. 1(f)). Luckey (stating he knew and
4   understood his rights and consequences of waiver) and his defense counsel (stating "I have
5   explained the significance of the preliminary hearing to the defendant, and consent to waiver
6   of a preliminary hearing in this case") signed the waiver. The judge accepted the waiver.
7   (*See* Ex. 4H). Luckey also entered a Not Guilty plea and was arraigned. (*See* Ex. 4I).

8          On April 8, 2021, a copy of the initial plea offer was sent to Luckey's post-
9   arraignment counsel. (*See* Ex. 6B). The State re-disclosed EDC discovery on May 20, 2021,
10  disclosed the body camera footage on June 28, 2021, and disclosed the two prior convictions
11  against the defendant from Michigan on July 21, 2021. (*See* Ex. 7). On July 15, 2021, Luckey
12  filed a Motion to Continue so the defense could review the body worn camera footage; the
13  State did not oppose, and the Court continued the trial to September 28, 2021. (*See* Ex. 4J).
14  The State confirmed that the initial plea offer was valid and would be until September 13,
15  2021. (*See* Ex. 6C at MCAO0119–120).

16         On September 9, 2021, Luckey's defense counsel submitted a deviation request and
17  proposed mitigation. (Ex. 6D). The prosecution agreed to the deviation request, accepting
18  certain mitigation and Luckey's willingness to accept responsibility, as well as resource
19  savings from not having to obtain out-of-state testimony to prove Luckey's historical priors.
20  (Ex. 6D, Ex. 6E). The State's deviated plea offer included a plea to a class 3 felony,
21  stipulating to a prison term between 2 and 3.5 years, which was more lenient than the initial
22  plea offer made in EDC, which included a plea to a class 3 felony but with a stipulated prison
23  term between 2 and 5 years. (Ex. 4L; Ex. 5A, Ex. 6D, Ex. 6E).

24         On September 13, 2021, Luckey and his defense counsel appeared before the Superior
25  Court, and Luckey responded to the Court's questioning per Rule 17, Ariz. R. Crim. P., by
26  informing the Court that, with the advice of his counsel, he had read, agreed to and signed
27  the deviated plea agreement, he understood and accepted its terms, conditions and
28  consequences, he was not threatened, forced or coerced, and he pled to the amended charges

8

per the deviated plea agreement. Luckey affirmed the factual basis of the crimes being pled. The Court found that Luckey knowingly, intelligently, and voluntarily accepted the plea, there was a factual basis for the plea, and the Court accepted the plea. (Ex. 4M, Ex. 4N). Similar statements and affirmations are included in Luckey's signed plea agreement. (Ex. 4O). Luckey is scheduled to be sentenced on November 11, 2021. (Ex. 4P).

## IV.    Dromiack's pending state court criminal case.

On June 18, 2021, Dromiack's girlfriend reported to police that he was intoxicated and had locked her out of her apartment. When police knocked on the door, Dromiack did not answer. Dromiack's girlfriend contacted him via FaceTime. An officer took the girlfriend's phone and told Dromiack to open the door. Dromiack, who was belligerent and verbally combative, eventually opened the door. Officers ordered him outside, but Dromiack would not leave, and challenged the officers to enter the apartment. The officers grabbed Dromiack to try to take him outside. Dromiack fought them, eventually kicking one of the officers in the chest and face, and then, while on the ground, tried to shove his fingers into an officer's mouth and eyes. Police had to strike him several times to get him to stop, before being able to handcuff and subdue him. (Ex. 11C; Ex. 12 at MCAO-0273-75, 0293-300).

On June 19, 2021 Dromiack had his initial appearance. He was released on his own recognizance under the supervision of pretrial services; a status conference was set in EDC for July 2, 2021; and his preliminary hearing was set for July 7, 2021. (Ex. 11D). The case was submitted to MCAO on June 22, 2021, and a direct complaint was filed that day charging Dromiack with one count of Aggravated Assault, a class 5 felony. (Ex. 11B). That day, MCAO made available to defense an initial plea offer of 1.5 years in prison (Ex. 12, MCAO-0267–72) and initial discovery, including the criminal history, police report, and certain medical records (Ex. 12, MCAO-0273-300).

On July 2, 2021, Dromiack moved to continue the status conference to receive discovery. (Ex. 11F). The State did not object and the Court reset the status conference for August 2, 2021 and the preliminary hearing for August 5, 2021. (*Id.*) At the August 2 status conference, Dromiack again moved to continue, stating "[d]efense counsel needs to submit

9

1   a deviation request to the State." (Ex. 11G). The State did not object, and the Court reset the

2   status conference for September 7, 2021 and preliminary hearing for September 10, 2021.

3   (*Id.*) On September 3, 2021, the State presented an amended initial plea offer to correct a

4   probation allegation, raised by defense.  (Ex. 12A, Ex. 13B). Dromiack's counsel requested

5   that this offer be kept open while he prepared and presented proposed mitigation and a

6   deviation request, and the prosecution agreed.  (Ex. 13A, Ex. 13B). The defense also moved

7   to continue again, and the State did not object. (Ex. 11H) On September 14, 2021, the

8   prosecution disclosed a copy of the body worn camera video from Dromiack's arrest. (Ex.

9   13A).  (Ex. 11H). The status conference currently is set for October 12, 2021 and the

10  preliminary hearing for October 15, 2021.

11  **V.     This litigation.**

12          On July 7, 2021—again, almost one year after Adel revised the plea policy—original

13  Plaintiffs Luckey, Calhoun, and AACJ filed this lawsuit, claiming violations of the Sixth

14  and Fourteenth Amendments to the U.S. Constitution, and seeking declaratory relief (all

15  Plaintiffs) and injunctive relief (Luckey and Calhoun only). (Doc. 1). On August 20, 2021,

16  Adel filed her Motion to Dismiss. (Doc. 25). On September 8, 2021, Plaintiffs filed the FAC,

17  dropping Calhoun and adding Dromiack, but otherwise asserting the same claims and

18  seeking the same relief. (Doc. 30).

19                                      **Argument**

20  **I.     Luckey and Dromiack's claims must be dismissed under *Younger*.**

21          Luckey and Dromiack's requests for declaratory and injunctive relief would interfere

22  with pending state court criminal proceedings. Consistent with *Younger*, this Court must

23  dismiss their claims. *See also Samuels v. Mackell*, 401 U.S. 66, 69 (1971). *Younger*

24  abstention is appropriate when: "(1) there is an ongoing state judicial proceeding; (2) the

25  proceeding implicate[s] important state interests; (3) there is an adequate opportunity in the

26  state proceedings to raise constitutional challenges; and (4) the requested relief seek[s] to

27  enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Arevalo*

28  *v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (internal quotation marks omitted).

Here, these criteria are met; abstention is mandatory. *See Beltran v. California*, 871 F.2d 777, 782–83 (9th Cir. 1988). First, Luckey and Dromiack were subject to ongoing state criminal court proceedings when the FAC[5] was filed, and they are still subject to those proceedings. (Doc. 30, ¶¶ 25, 29; Background, §§ III, IV, *supra*). Second, the State of Arizona has "an important interest in enforcing its criminal statutes" and maintaining the integrity of its criminal proceedings "free from federal interference." *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986); *see also We Are America v. Maricopa Cnty. Bd. of Supervisors*, 386 Fed. Appx. 726, 727 (9th Cir. 2010) (affirming *Younger* dismissal).

Third, "[t]he adequate opportunity prong of *Younger* . . . requires only the absence of procedural bars to raising a federal claim in the state proceedings." *Commc'ns Telesys. Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999) (internal quotation marks omitted). The burden is plaintiffs' to demonstrate a procedural bar. *Gilbertson v. Albright*, 381 F.3d 965, 983 (9th Cir. 2004). Here, there is no basis to conclude that Luckey and Dromiack could not raise their federal challenges in their state court criminal proceedings. (*See* Background, § II, *supra*); *see We Are America*, 386 Fed. Appx. at 727 (affirming *Younger* dismissal because criminal defendants had adequate opportunity to litigate constitutional claims in Arizona court cases). Indeed, Arizona appellate courts regularly consider criminal defendants' constitutional challenges to the prosecution's plea bargaining. *See, e.g., Morse*, 617 P.2d at 1147; *State v. Caperon*, 728 P.2d 296, 298 (Ariz. Ct. App. 1986); *State v. Felix*, 737 P.2d 393, 394–96 (Ariz. Ct. App. 1986).

Fourth, Luckey and Dromiack's requested relief would interfere with ongoing state proceedings. "[D]irect interference is not required as a precondition for *Younger* abstention." *Gilbertson*, 381 F.3d at 978 (quotation mark omitted); *see also Kugler v. Helfant*, 421 U.S. 117, 130 (1975) (federal court may not "intervene piecemeal to try collateral issues"). Here, Luckey and Dromiack request declaratory and injunctive relief which would have the practical effect of interfering with the plea-bargaining process, waivers of preliminary

---

[5]   Also, Luckey was subject to ongoing state court criminal proceedings at the time the original Complaint was filed. (Doc. 1, ¶ 22; Doc. 25, Background, § III).

hearing, plea agreements and judicial orders under Rule 17, Ariz. R. Crim. P. 17, judicial orders accepting and entering pleas and waivers, judicial orders adjudicating convictions and imposing sentencings based on those pleas, and judicial processes and orders on review of motions to withdraw a plea or to restate a plea—among many other disruptive consequences to their own and thousands of putative class members' state criminal court cases which proceed through EDC. *See, e.g.*, *Miller v. Cnty. of Nassau*, 467 F. Supp. 2d 308, 317–318 (E.D.N.Y. 2006) (*Younger* dismissal where criminal defendants' claims arose out of district attorney's plea policy).

Because *Younger* abstention applies, the Court must dismiss Luckey's and Dromiack's claims and requests for declaratory and injunctive relief asserted in the FAC.

**II.    AACJ lacks standing to sue.**

    **A.    AACJ lacks "organizational/associational" standing.**

An organization can assert standing (1) directly or (2) on behalf of its members. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021). To demonstrate standing, an organization must show that: it has suffered an injury-in-fact, meaning an injury that is "concrete and particularized" and "actual and imminent"; the alleged injury is "fairly traceable" to the defendants' conduct; and it is "more than speculative" that the injury is judicially redressable. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Here, AACJ asserts standing to sue on its own behalf and on behalf of its members. (*See* Doc. 30, ¶¶ 20, 32, 33, 59, 111–115). Regardless, the Complaint fails to show AACJ's standing to pursue the requested declaratory relief.[6]

**1.**    "[A]n organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose." *E. Bay Sanctuary Covenant*, 993 F.3d at 663. An organization cannot "manufacture the injury by incurring litigation costs or simply choosing to spend

---

[6]    The FAC's injunctive relief request is not applicable to the AACJ's claims. (*See* Doc. 30, ¶¶ 164, 165). But even if it could be read to include AACJ requests for injunctive relief, they would fail for lack of standing for the same reasons as articulated in this Motion.

money fixing a problem that otherwise would not affect the organization at all," but it can show that it "would have suffered some other injury" had it "not diverted resources to counteracting the problem." *Id.*

Here, the FAC alleges that AACJ trains its members regarding representation of criminal defendants, including trainings on "navigating EDC cases" and "EDC-related issues" "in light of" the alleged "Retaliation Policy." (Doc. 30, ¶¶ 33, 112). The training materials are not attached to the FAC.[7] Two of the trainings allegedly occurred in 2017 and 2018, (*id.*, ¶ 113), which is outside the two-year statute of limitations period. *See TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). The FAC does not state when the third training occurred. (Doc. 30, ¶ 112); there is no basis for any inferring it came within the two-year limitations period. In Doc. 23, Adel moved to strike Plaintiffs' Doc. 6-1 Exhibits, including the proposed declaration of AACJ President Louis Fidel. (Doc. 6-1, Ex. 5). If this Court does not strike Doc. 6-1, Doc. 6-1 undermines AACJ's reliance on the third training because it is the same training identified in the proposed Fidel declaration allegedly presented in 2015, also outside the two-year limitations period. (*Id.*, ¶ 6). The FAC also describes these three trainings as concerning EDC fast track timing, EDC discovery limits and criminal defense attorneys' ethical obligations in EDC, (Doc. 30, ¶¶ 112, 113), indicating that the trainings were developed to address criminal procedures and ethical rules adopted by the Arizona courts—not MCAO. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997) ("[T]he injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court[.]"). Further, generalized grievances about EDC fast track timing, EDC discovery limits or criminal defense attorneys' ethical obligations do not establish standing. *Warth v. Seldin,* 422 U.S. 490, 499 (1975). Finally, no specific fact allegations show that these trainings were developed outside of AACJ's regular curriculum[8] or were specially developed in response to MCAO plea-

---

[7]     As part of the meet and confer process, undersigned counsel requested copies of these trainings, but Plaintiffs' counsel refused to provide them.

[8]     Training is part of AACJ's regular function. (*See* AACJ, Home

bargaining in the EDC. *Cf. Ctr. for Law & Educ. v. U.S. Dep't Educ.*, 315 F. Supp. 2d 15, 24–25 (D.D.C. 2004). Nothing in the FAC contains specific fact allegations showing any causal relationship between the trainings and the Applicable Plea Policy, which became effective several years <u>after</u> the 2015, 2017 and 2018 trainings. In sum, AACJ cannot rely on these alleged trainings as an "injury in fact" to confer standing.

Similarly, the FAC lacks specific allegations describing the alleged criminal rules change petitions or lobbying efforts made by AACJ, showing that any such rules change petitions or lobbying efforts were outside its normal mission[9] and usual functions, or showing that they were driven by MCAO's plea policy in EDC. (Doc. 30, ¶ 114). No specific fact allegations show that AACJ submitted a petition to change Rules 15.1(a)(1) (EDC discovery rule) or 15.8 (Superior Court discovery rule during pendency of plea offer) due to MCAO's plea policy in EDC (or at all). Further, even assuming AACJ submitted a petition regarding EDC fast track timing and EDC discovery rules, such activity would not be "fairly traceable" to MCAO, which has no control over the decisions of the Arizona Supreme Court in establishing rules and reviewing proposed rules changes. *See Bennett*, 520 U.S. at 169.

The FAC's allegation regarding "drafting and pushing comprehensive legislation in 2021 that would require more transparency around MCAO plea bargaining tactics," (Doc. 30, ¶ 114), is conclusory, vague, and fails to satisfy the *Iqbal/Twombly* standard. This allegation lacks a causal connection between the alleged lobbying effort ("transparency around MCAO plea bargaining tactics") and the alleged violation of a constitutional right. Indeed, criminal defendants, their defense counsel, and AACJ do not have a right to have "transparency" into the prosecution's privileged internal decisions, strategies, and tactics in plea-bargaining. *See, e.g.*, *United States v. Nobles,* 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."); Ariz. R. Crim.

---

https://www.aacj.org/, CLE  https://www.aacj.org/calendar).

[9]      AACJ regularly submits rules change petitions/comments as part of its normal function. (*See* AACJ, Our Work, https://www.aacj.org/our-work; Ariz. S. Ct., Rules Forum, https://www.azcourts.gov/Rules-Forum/aff/119).

P. 15.4(b)(1). Moreover, AACJ's By-Laws state that part of its normal mission is "to engage in all activities on a local, state and national level that will advance the purposes for which this organization is formed." AACJ, By-Laws, https://www.aacj.org/by-laws. In 2014, years before this lawsuit, AACJ established a standing "Political and Legislative" committee to "oversee AACJ's lobbying efforts." AACJ, Committees, https://www.aacj.org/committees. And AACJ's website does not identify any AACJ effort to "draft and push" in 2021 any proposed legislation regarding MCAO's plea policy in EDC. Because AACJ lobbying activities are part of its normal mission, they do not support standing here.

2.    "[A]n association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343–45 (1977). To do so, "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth*, 422 U.S. at 511. In other words, an association must demonstrate that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343.

Here, the FAC vaguely alleges through conclusory language that AACJ members "are denied the time and information required to meaningfully represent their clients" and "makes it difficult for AACJ's members to provide adequate, ethical counsel to EDC clients." (Doc. 30, ¶¶ 20, 32) What is meant by "meaningful" or "adequate, ethical" representation is not specifically stated nor are the defense attorney members' alleged failures in providing "meaningful" and "adequate, ethical" representation specifically stated as being directly linked to the Applicable Plea Policy (or the Outdated Plea Policy), *i.e.*, MCAO plea-bargaining, in EDC. *Cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363, 3779 (1982) (demonstrating concrete organizational injury requires more than showing "setback to an organization's abstract social interests"). The FAC goes on to allege that its members have

15

to "unnecessarily devote increased time and resources to the initial investigation of the charges against their clients, and often to unnecessarily duplicate those investigative efforts after receiving discovery to which they were earlier entitled." (Doc. 30, ¶¶ 32, 59, 115). AACJ cannot predicate standing based on its members' alleged expenditure of time to become informed about their own clients' cases controlled by the fast-track timing and discovery rules established for EDC by the Arizona courts—not MCAO plea-bargaining. Further, AACJ cannot show standing based on an attorney's allegations of having to devote resources in engaging in his chosen field of the practice of law within the confines of applicable court rules and processes because it does not establish a complete prohibition of the attorney's practice. *See Conn v. Gabbert*, 526 U.S. 286, 292 (1999). There is no cognizable constitutional deprivation under such circumstances. *See, e.g.*, *id.* at 291–93; *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003). There are no specific fact allegations to show that MCAO's plea policy completely precludes AACJ members from practicing law and advising clients in EDC. The reality is that Arizona's courts have determined the applicable pace and discovery in EDC. All parties to those proceedings are obligated to work within the requirements of EDC rules/processes; this does not create standing for defense attorneys to sue the prosecution. To the extent this allegation refers to effective assistance of counsel, it cannot establish an injury to AACJ members (or AACJ) because the right to effective assistance of counsel belongs solely to individual criminal defendants. *See Conn*, 526 U.S. at, 292–93; *Juvenile Matters Trial Lawyers Ass'n v. Judicial Dep't*, 363 F. Supp. 2d 239, 245 (D. Conn. 2005). And to the extent the Court considers it, the proposed Fidel Declaration vaguely asserts that AACJ's members are "deeply troubled" and "deeply concerned" by the Outdated Plea Policy. (Doc. 6-1, Ex. 5, ¶¶ 3, 5). This conclusory allegation does not establish standing because an abstract emotion is not a concrete and demonstrable "injury in fact."

Additionally, individual AACJ members would be required to participate in this suit to show how the alleged "Retaliation Policy" allegedly led to ineffective representation in particular circumstances in particular cases. The FAC contains allegations regarding

1    "Maricopa County Public Defenders" and several individual defense attorneys, (Doc. 30, ¶¶

2    116–19), none of whom are named as Plaintiffs or even identified as AACJ members. These

3    allegations do not support AACJ standing.  Because these allegations are impertinent and

4    immaterial, the Court should strike and not consider them. Fed. R. Civ. P. 12(f). Assuming

5    *arguendo* that these are AACJ members and that the Court considers ¶¶ 116–19, these

6    allegations prove that AACJ would have to present testimony from its members to prove its

7    claims. This is prohibited for associational standing. *Hunt*, 432 U.S. at 343. AACJ lacks

8    standing to bring claims on behalf of its members. *See Warth*, 422 U.S. at 511.

9        Because AACJ lacks "organizational/associational standing," this Court should

10   dismiss AACJ's claims for declaratory relief.

11       **B.    AACJ lacks "third party" standing.**

12       Nothing in the FAC seeks to establish AACJ's third party standing. Even if it did,

13   that argument would fail as a matter of law. *See Kowalski v. Tesmer*, 543 U.S. 125, 130–34

14   (2004) (holding two attorneys did not have third-party standing to invoke Fourteenth

15   Amendment rights of indigent criminal defendants in constitutional challenge seeking

16   declaratory and injunctive relief against state's procedure for appointing appellate counsel

17   for indigent defendants who pled guilty). Specifically, AACJ cannot show that it "has a

18   'close' relationship with the person who possesses the right" because AACJ itself does not

19   represent putative class members; further, AACJ cannot show "a 'hindrance' to the [criminal

20   defendant's] ability to protect his own interests" In their own state court criminal cases. *See

21   id.*, 543 U.S. at 130; *see also Conn*, 526 U.S. at 292–93 (rejecting attorney's attempt to

22   adjudicate client's rights); (Background, § II, *supra*). This Court should not allow AACJ to

23   circumvent the *Younger* doctrine. Dismissal is appropriate.

24   **III.   Plaintiffs' claims fail as a matter of law.**

25       Plaintiffs' Claims One, Two, and Three fail as a matter of law. They are predicated

26   on the legally invalid assertion that a prosecutor cannot constitutionally exercise discretion

27   to make an initial lower plea offer to a criminal defendant at the preliminary stage of the

28   state court criminal process conditioned upon the defendant's timely acceptance of the initial

17

plea offer and waiver of the preliminary hearing, while warning that in the event of non-acceptance a subsequent plea offer will be "substantially harsher" (Outdated Plea Policy) or "presumably will be harsher" (Applicable Plea Policy). Regardless of which of these Policies was effective and applied to Luckey and Dromiack's criminal cases, both Policies are constitutional under almost fifty years of U.S. Supreme Court precedent.

Our country's legal system vests broad discretion in prosecuting attorneys. This discretion exists in the exercise of plea-bargaining negotiations. *Bordenkircher*, 434 U.S. at 365. It is well-settled that criminal defendants have no constitutional right to a plea agreement and the state is not required to offer one. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). A plea bargain can be obtained only by agreement among the defendant, his counsel, and the prosecuting attorney, subject to the approval of the trial court. Further, it can be revoked by any party at any time prior to its acceptance by the court. Accordingly, the prosecution is free to withdraw a plea offer prior to its acceptance. *See, e.g.*, *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992); Ariz. R. Crim. P. 17.4(b), (d). When the prosecution offers a plea agreement, it is free to include such conditions and terms as it deems appropriate—even "harsh" ones—so long as the defendant is free to accept or reject the offer. This practice does not constitute prosecutorial punishment or retaliation in the plea-bargaining process. *Bordenkircher*, 434 U.S. at 363.

The Supreme Court has held fast to these controlling principles since the 1970s. *See Chaffin v. Stynchcombe*, 412 U.S. 17, 30 (1973) (collecting cases). Although the circumstances of plea bargaining in those cases "ha[d] a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices was upheld as an inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Id.* at 30–31. "[A]n incidental consequence of [plea bargaining] is that it may require the accused to choose whether to accept the risk of a higher sentence or to waive his rights." *Id.* "The choice occasioned by the possibility of a harsher sentence, even in the case in which the choice may in fact be 'difficult,' does not place an impermissible burden on the right of a criminal defendant to appeal or attack collaterally his conviction."

18

1  *Id.* at 35.

2      *Bordenkircher* is illustrative. The Court held that the prosecutor's conduct did not

3  violate the Fourteenth Amendment's Due Process Clause, explaining that "in the 'give-and-

4  take' of plea bargaining, there is no . . . element of punishment or retaliation so long as the

5  accused is free to accept or reject the prosecution's offer." *Id.* at 363. *Bordenkircher*'s

6  explanation of plea bargaining aptly shows why Plaintiffs fail to state a claim:

> Plea bargaining flows from the mutuality of advantage to defendants and prosecutors, each with his own reasons for wanting to avoid trial. . . . Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. . . . Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.

> While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas. . . . It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

22  *Id.* at 363–64 (cleaned up and citations omitted). A long line of cases confirms the

23  constitutionality of plea bargaining where the prosecutor's offers get harsher with time. *See,*

24  *e.g.*, *United States v. Goodwin*, 457 U.S. 368 (1982); *Williams v. Bartow*, 481 F.3d 492, 504

25  (9th Cir. 2007); *United States v. VanDoren*, 182 F.3d 1077, 1082 (9th Cir. 1999).

26      Notably, in *United States v. Ruiz*, the Supreme Court held that there was no

27  constitutional violation when, in a "fast-track" setting, prior to a determination of probable

28  cause the prosecution offered a plea bargain which would have required that the criminal

19

defendant waive indictment, trial, and an appeal in exchange for a reduced sentence recommendation. 536 U.S. 622, 633 (2002). Among other things, the prosecutors' "fast track" plea offer required that the defendant waive the right to receive impeachment information relating to any informants or other witnesses and information supporting any affirmative defense the defendant raises if the case goes to trial. *Id.* at 625. The Court held that the "fast track" plea offer did not violate the Constitution, stating that "the need for this information is more closely related to the *fairness* of a trial than to the *voluntariness* of the plea." *Id.* at 633; *see also id.* at 630 ("[T]he Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor," and collecting cases).

Thus, it is well-established that an MCAO prosecutor may extend a lower plea offer to an EDC defendant, conditioned upon the defendant waiving the right to a preliminary hearing, to be accepted within a specific time frame, otherwise subject to being withdrawn, and accompanied by a warning that, if a second plea offer is made, the terms and conditions of the second plea offer will be "substantially harsher" or "presumably will be harsher." Neither the Outdated Plea Policy nor the Applicable Plea Policy violates an EDC defendant's Sixth Amendment or Due Process rights. It is the very sort of plea-bargaining which has been upheld as constitutional for almost five decades of federal jurisprudence.[10]

As for Luckey and Dromiack's particular criminal cases, MCAO prosecutors complied with Rule 15.1(a)(1), Ariz. R. Crim. P., in the EDC setting, *i.e.*, they provided Luckey and Dromiack with the police reports which were in the prosecutor's possession at the time of charging. (Doc. 30, ¶ 85; Background, §§ III, IV, *supra*). Indeed, the prosecutors went beyond the EDC disclosure requirements by disclosing additional records to Luckey

---

[10]   With respect to Plaintiffs' errant claim that state law has established a different set of rights in plea bargaining, Arizona law is in accord with federal law. *See, e.g.*, *Morse*, 617 P.2d at 1147; *Caperon*, 728 P.2d at 298; *Felix*, 737 P.2d at 394–96 .

and Dromiack. (*Id.*) This was adequate information for Luckey, Dromiack, and their counsel to assess the State's case at the EDC stage, and it meets the requirements for "fast-track" plea-bargaining established by *Ruiz*. Further, the prosecutors did not object to lengthy continuances to the preliminary hearing (approximately eight weeks for Luckey and going-on approximately twelve weeks for Dromiack) after making the plea offers, while keeping the same plea offers "open." (*Id.*). There was no prosecutorial "rush job," (Doc. 30, ¶ 85). *Cf. Williams v. Schiro*, 351 Fed. Appx. 252, 253–54 (9th Cir. 2009) (concluding no constitutional violation where prosecutor set plea offer acceptance deadline and defense counsel had time to advise defendant). Luckey and Dromiack had plentiful opportunity to consider the plea offers and obtain the advice of defense counsel.

The FAC also lacks specific allegations to support a finding of actual prosecutorial vindictiveness.[11] Nor could a prosecutor's warnings regarding "substantially harsher" or "presumed harsher" second plea offers in the event of unsuccessful initial plea offers show a presumption of vindictiveness. *See United States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir. 1996) ("During plea negotiations . . . prosecutors may threaten additional charges and may carry through on this threat" without offending the Constitution); *cf. United States v. Stewart*, 770 F.2d 825, 829 (9th Cir. 1985) ("Bringing additional charges because a defendant is not willing to plea bargain constitutes permissible prosecutorial discretion."); *United States v. Allsup*, 573 F.2d 1141, 1143–44 (9th Cir. 1978).

Moreover, Luckey and his counsel had adequate opportunity to raise alleged discovery issues with the EDC judge, who listened then asked Luckey if he wanted to waive the preliminary hearing. Luckey, in the presence of counsel, stated that he agreed to waive, and he (stating that he knew and understood his rights and the consequences of waiver) and his defense counsel (stating "I have explained the significance of the preliminary hearing to the defendant, and consent to waiver of a preliminary hearing in this case") signed the waiver. The judge entered the waiver. (Background, § III, *supra*). Luckey's plea offer

---

[11]   The emails quoted in the FAC do not pertain to Luckey or Dromiack. Regardless, they do not show unconstitutional plea bargaining under the decades of federal cases cited here.

1    remained "open" in Superior Court, while the parties' counsel negotiated plea offer terms.

2    Luckey then agreed to a deviated plea agreement—containing certain deviated terms

3    proposed by his defense counsel and agreed by the prosecution upon considering defense's

4    proposed mitigation as well as resource savings to the State—which is more lenient than the

5    EDC offer. (*Id.*). During the plea colloquy in open court, Luckey, in the presence of his

6    counsel, acknowledged that he knew and understood the terms of the plea agreement, had

7    received advise of defense counsel, voluntarily entered into the plea agreement, was not

8    threatened or coerced, and pled guilty to the amended charges. He made similar

9    acknowledgements in the written plea agreement. (*Id.*). Dromiack's plea offer remains

10   "open" in EDC; he also has not accepted or rejected it. (Background, § IV, *supra*). The

11   potential collateral consequences of a lower plea offer potentially being withdrawn and being

12   replaced with a greater plea offer does not establish prosecutorial vindictiveness. *See*

13   *Bordenkircher*, 434 U.S. at 364. Nor is there anything unconstitutional about a prosecutor

14   making lower plea offers in EDC so as to save the time and expense of further litigation in

15   Superior Court; the Supreme Court has recognized the importance of plea bargaining to

16   conserve limited prosecutorial resources. *See Santobello v. New York*, 404 U.S. 257, 260

17   (1971) ("[P]lea bargaining . . . is an essential component of the administration of justice. . .

18   . If every criminal case were subjected to a full-scale trial, the States and the Federal

19   Government would need to multiply by many times the number of judges and court

20   facilities").

21        In sum, nothing about plea-bargaining in Luckey's and Dromiack's cases—or the

22   Outdated Plea Policy or the Applicable Plea Policy—falls outside of the constitutionally-

23   permissible "give-and-take" of plea bargaining. As a matter of law, Plaintiffs' claims fail.

### Conclusion

25        For these reasons, this Court should dismiss Plaintiffs' First Amended Complaint

26   with prejudice.

27

28

22

**RESPECTFULLY SUBMITTED** this 22nd day of September 2021.

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

By /s/ *Ann Thompson Uglietta*
ANN THOMPSON UGLIETTA
CHARLES TRULLINGER
JOSEPH I. VIGIL
Deputy County Attorneys
*Attorneys for Allister Adel Maricopa County Attorney*

1

CERTIFICATE OF SERVICE

2

        I hereby certify that on September 22, 2021, I caused the foregoing document to be

3

electronically transmitted to the Clerk's Office using the CM/ECF System for filing and
transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5

Honorable G. Murray Snow
United States District Court

6

Sandra Day O'Connor U.S. Courthouse, Suite 622
401 West Washington Street

7

Phoenix, Arizona 85003

8

Honorable Eileen S. Willett

9

Magistrate Judge
United States District Court

10

Sandra Day O'Connor U. S. Courthouse, Suite 325
401 West Washington Street

11

Phoenix, Arizona 85003

12

Somil Trivedi (pro hac vice application forthcoming)

13

American Civil Liberties Union Foundation
Criminal Law Reform Project

14

915 15th St., NW

15

Washington, DC 20005
strivedi@aclu.org

16

17

Jared G. Keenan (027068)
Victoria Lopez (330042)

18

American Civil Liberties Union Foundation of Arizona

19

3707 North 7th Street, Suite 235
Phoenix, Arizona 85014

20

jkeenan@acluaz.org
vlopez@acluaz.org

21

*Attorneys for Plaintiffs*

22

/s/ S. Rojas

23

24

25

26

27

28