ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY:  ANN THOMPSON UGLIETTA (013696)
     CHARLES TRULLINGER (018936)
     JOSEPH I. VIGIL (018677)
     Deputy County Attorneys
     uglietta@mcao.maricopa.gov
     trullinc@mcao.maricopa.gov
     vigilj@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Allister Adel Maricopa County Attorney

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Samuel Luckey and Aaron Dromiack, on behalf of themselves and those similarly situated, and,<br><br>Arizona Attorneys for Criminal Justice,<br><br>Plaintiffs,<br><br>v.<br><br>Allister Adel, in her official capacity as County Attorney for Maricopa County<br><br>Defendants. | No. CV21-01168-PHX-GMS (ESW)<br><br>**DEFENDANT MARICOPA COUNTY ATTORNEY ALLISTER ADEL'S REPLY IN SUPPORT OF HER MOTION TO DISMISS FIRST AMENDED COMPLAINT PER RULES 12(b)(1) AND 12(b)(6), FED. R. CIV. P.**<br><br>**[DOCS. 30, 40]** |

**Table of Contents**

**MEMORANDUM OF POINTS AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . . .1

**Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    **I.**    **Luckey and Dromiack's claims must be dismissed under *Younger*. . .1**

    **II.**   **AACJ lacks standing to sue.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

          **A. AACJ lacks "organizational" standing to sue……………………...9**

          **B. AACJ lacks "associational" standing to sue……………………….10**

    **III.**  **Plaintiffs' claims fail as a matter of law.** . . . . . . . . . . . . . . . . . . . . . . . .11

    **IV.**  **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., the Court should grant Defendant Maricopa County Attorney Allister Adel's ("Adel") Motion to Dismiss (Doc. 40) Plaintiffs' First Amended Complaint ("FAC") (Doc. 30) with prejudice.

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

Plaintiffs' First Amended Complaint and Response are effectively policy papers on proposed regulation of plea bargaining in early disposition/fast-track court settings written under the guise of a Section 1983 lawsuit. They ask this Court to ignore decades of U.S. Supreme Court and Ninth Circuit plea-bargaining precedent. They ask this Court to enmesh itself in the administration of Arizona state court criminal proceedings. And they ask this Court to turn a blind eye to judicially noticeable [Docs. 33, 44] MCAO written plea policies, Arizona Superior Court administrative orders, and records from Plaintiffs' own on-going state court criminal cases because those documents inconveniently contradict Plaintiffs' incorrect and artificial narrative.

Plaintiffs ask this Court to uncritically accept their attempted end run around available review processes in Arizona state courts, Arizona Supreme Court criminal procedure rules, and Arizona appellate court cases rejecting the legal theories proposed in this lawsuit, in an effort to bring about their preferred form of plea bargaining in the Maricopa County Superior Court's Early Disposition Court ("EDC"). Respectfully, that is not the role of the federal judiciary.

This Court should dismiss this suit with prejudice on the grounds of *Younger* abstention, lack of standing, and on the merits.

### Argument

**I.    Luckey's and Dromiack's claims must be dismissed under *Younger*.**

Plaintiffs seek federal court declaratory judgments and injunctions (a) precluding MCAO prosecutors from making an initial plea offer in EDC upon the condition that the criminal defendant waive the preliminary hearing and enter a guilty plea per the offered terms and concurrently warning the criminal defendant that non-acceptance of the initial

1

offer in EDC could result in its withdrawal, and any subsequent plea offer in Superior Court could be harsher; and (b) precluding MCAO prosecutors from proffering the plea agreement (or preliminary hearing waiver agreement) in opposition to a criminal defendant's attempt to withdraw from his/her plea (or waiver) on the alleged basis of involuntariness. [Doc. 30, ¶¶ 161–65]. Plaintiffs' claims and requests for relief are barred by the abstention doctrine established by *Younger v. Harris*, 401 U.S. 37 (1971).

**1.** Controlling case law has long recognized that plea bargaining is an integral part of the criminal court process. In *Santobello v. New York*, 404 U.S. 257 (1971), a criminal defendant lost his state court appeals raising challenges to his not-guilty plea, conviction, and sentencing arising out of the prosecution's breach of the parties' plea agreement; then he petitioned the U.S. Supreme Court to hear his case. "The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,'" as the Supreme Court wrote, "is an essential component of the administration of justice." The Court further explained:

> Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities. Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

*Id.* at 260. The Court later described plea bargaining as part of the "process of criminal justice," along with the "adjudicative element" of the sentencing judge's plea colloquy and acceptance of the plea. *Id.* at 262.

In light of this long-established precedent situating plea-bargaining within the "process of criminal justice," Plaintiffs' argument that plea bargaining is ancillary to and distinct from the state criminal court process lacks merit. (*See* Doc. 47 at 7–9). In particular,

2

Plaintiffs' reliance upon *Gerstein* and *Arevalo* is misplaced. (*Id.*) In those cases, the plaintiffs sought federal court injunctive relief directed at pretrial detention and bail practices, not plea-bargaining practices. *See Gerstein v. Pugh*, 420 U.S. 103, 108, n.9 (1975) ("The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, *an issue that could not be raised in defense of the criminal prosecution.*") (emphasis added, because this portion of the quote is misleadingly omitted by Plaintiffs); *Arevalo v. Hennessy*, 882 F.3d 763, 764 (9th Cir. 2018) (bail hearing). In those cases, the federal court's decision on the requested injunctive relief would have no effect on the substantive processing and disposition of criminal charges in state criminal court cases.

In contrast, plea bargaining is "an essential component of the administration of justice" which can and frequently does lead to the final disposition of criminal charges via plea agreement and concomitant plea colloquy, plea acceptance, conviction, and sentencing in state criminal court. *Santobello*, 404 U.S. at 260, 262; (*see also* Doc. 40, Background, § II). Plaintiffs' requested relief here would have the effect of enjoining plea bargaining and concomitant disposition of criminal charges by agreement at successive stages of state court criminal cases. Because Plaintiffs' requested federal court declaratory and injunctive relief would have the practical and substantive effect of interfering with the processing and disposition of criminal charges via agreement in state criminal court cases, *Younger*'s "state criminal court interference" prong applies.[1]

    **2.**    "The adequate opportunity prong of *Younger* . . . requires only the absence of procedural bars to raising a federal claim in the state proceedings." *Commc'ns Telesys. Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999) (internal quotation marks omitted). The burden is Plaintiffs' to demonstrate a procedural bar. *Gilbertson v. Albright*,

---

[1] Notably, the *Santobello* Court reviewed the criminal defendant's claims only after his exhaustion of state court review processes. In remanding the case to the state court "in the interest of justice," the Court found that "[t]he ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide" the relief to be provided in the criminal defendant's state court case. *Id.* at 262–63.

381 F.3d 965, 983 (9th Cir. 2004). "[A] federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987); *see also Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 619 (9th Cir. 2003).

Here, Plaintiffs do not cite any Arizona statutes or rules establishing a procedural bar to bringing their constitutional challenges in their state court criminal cases. They do not demonstrate that they are procedurally precluded from utilizing the state court review processes discussed in § II of the Background section of Adel's Motion to Dismiss. Indeed, *State v. Morse*, 617 P.2d 1141, 1147 (Ariz. 1980); *State v. Caperon*, 728 P.2d 296, 298 (Ariz. Ct. App. 1986); and *State v. Felix*, 737 P.2d 393, 394–96 (Ariz. Ct. App. 1986), show that Arizona appellate courts regularly consider criminal defendants' constitutional challenges to prosecution's plea-bargaining. Plaintiffs' attempted distinction of those cases juxtaposing the timing of plea offers is inapposite because there is no procedural bar which turns on any such distinction. Indeed, in *Felix*, the Arizona Court of Appeals considered a criminal defendant's appeal arising out of the trial court's denial of his motion to dismiss on the alleged basis of prosecutorial misconduct purportedly arising out of an initial plea offer. 737 P.2d at 394–95. The offer was made when the parties appeared for the preliminary hearing; it was not accepted and therefore was withdrawn. *Id.* The preliminary hearing proceeded, after which the criminal defendant was bound over to Superior Court, where the prosecution made a harsher plea offer—also not accepted—leading to a jury trial and conviction. *Id.* The Court of Appeals found that the prosecution's plea-bargaining (making an initial lower plea offer before the preliminary hearing and a subsequent harsher offer after the preliminary hearing) was not evidence of prosecutorial punishment or retaliation in the plea-bargaining process, because the criminal defendant remained free to accept or reject the plea offers. *Id.* ("Appellant had no constitutional right to any plea offer, much less to an offer with a particular charge and sentence."). *Felix* shows that there is no procedural bar preventing criminal defendants such as Plaintiffs from seeking Arizona court review of constitutional challenges to plea offers made prior to conduct of the preliminary hearing.

4

Plaintiffs' reliance on *Meredith v. Oregon*, 321 F.3d 807 (9th Cir. 2003), does not establish the requisite "unambiguous authority" necessary to demonstrate a procedural bar against raising their constitutional challenges in their Arizona state court criminal cases. *Meredith* involved Oregon administrative procedures and Oregon administrative hearings, not Arizona criminal procedures and Arizona criminal court proceedings. *See Meredith*, 321 F.3d at 818–19. Under the "unique posture of the case," the Ninth Circuit held that *Younger* abstention was inapplicable due to Oregon procedural rules preventing adequate review in the Oregon state court forum. *Id*. Plaintiffs have not identified any such procedural bar here.

To the contrary, Plaintiffs can raise their constitutional challenges to plea-bargaining practices with the EDC judge, the Superior Court judge, on direct appeal (if convicted after trial) and/or in post-conviction review (if convicted after plea or after trial). (Doc. 40, Background, § II); *see also Morse*, 617 P.2d at 1147; *Caperon*, 728 P.2d at 298; *Felix*, 737 P.2d at 394–96; *State v. Jennings*, 448 P.2d 59, 61 (Ariz. 1968) (reviewing voluntariness of plea); *State v. Dodd*, 577 P.2d 274, 275 (Ariz. Ct. App. 1978) (same); *cf. We are America v. Maricopa Cnty. Bd. Supervisors*, 386 Fed. Appx. 726, *1 (9th Cir. 2010) (criminal defendants "have an adequate opportunity to litigate their constitutional claims in the state court proceedings.").

To the extent Plaintiffs complain about the potential lengthy process of state court review, the Supreme Court and Ninth Circuit already have rejected such complaint as not establishing an inadequate state forum. *See Pennzoil*, 481 U.S. at 15; *Baffert*, 332 F.3d at 619–21. And while Plaintiffs have chosen not to raise their constitutional challenges in their state court criminal cases, instead choosing to raise them in this Court, those choices do not establish an inadequate state forum; the United States Supreme Court has held that "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15–17. Accordingly, the fact that Plaintiffs chose not to avail themselves of their federal defenses in the state courts does not render them an inadequate forum. Finally, even assuming

5

*arguendo* that the objections to EDC discovery and timing limitations Luckey asserted during his EDC status conference properly could be characterized as constitutional challenges to EDC plea bargaining, Luckey's lack of success in making those objections does not establish a procedural bar to raising them in the state court forum. *See Baffert*, 332 F.3d at 621. Because Arizona state courts provide an adequate opportunity for Plaintiffs to raise their constitutional challenges to plea bargaining in their state court criminal cases, *Younger's* "adequate opportunity" prong is satisfied.

**3.**     The plaintiff bears the burden of demonstrating that one of the *Younger* exceptions applies. *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). Plaintiffs do not assert any *Younger* exception other than alleged "irreparable injury." But there is no "irreparable injury" where, as here, the state proceedings provide an appropriate venue for the plaintiff to protect his or her federally protected rights. "[T]he cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term." *Younger*, 401 U.S. at 46; *see also Kugler v. Helfant*, 421 U.S. 117, 1531 (1975) (applying *Younger* dismissal, and stating "[t]he policy of equitable restraint expressed in *Younger v. Harris*, in short, is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights.").

Plea bargaining is not an "extraordinary circumstance" requiring immediate federal intrusion in state court criminal cases. Plea bargaining has been recognized by federal and Arizona courts as lawful and not violative of the Constitution for approximately 50 years. (Doc. 40, Argument, § III). Plaintiffs do not have a constitutional right to any particular plea offer, they are free to reject a plea offer, and the prosecution is free to make no plea offer, withdraw a plea offer before its acceptance, and make a new harsher plea offer. (*Id.*) The fact circumstances of plea-bargaining in Plaintiffs' criminal cases do not establish a risk of "irreparable injury." The judicially noticeable records of Plaintiffs' own state court criminal case proceedings show that there was no pushing and rushing of plea-bargaining in EDC.

(Doc. 40, Background, §§ III, IV). The dockets in Plaintiffs' cases show that the prosecution did not object to lengthy continuances of hearings, during which time Plaintiffs had ample opportunity to consider the pending plea offers with assistance from their defense counsel. (*Id.*) The record shows that the "substantially harsher offer" language complained-of in the FAC does not appear anywhere in the records of Plaintiffs' plea offers or case correspondence. (*Id.*) Discovery in both cases went beyond the EDC rule requirements. (*Id.*) Not only was Luckey's EDC plea offer kept open post-arraignment in Superior Court, but the prosecution further reviewed Luckey's individual circumstances and proffered mitigation, and it made a deviated (lower) plea offer in Superior Court, to which Luckey agreed. (*Id.*) Luckey's court records further show that in the presence of his defense counsel, Luckey agreed "knowingly, intelligently and voluntarily" when waiving a probable cause determination in EDC and accepting the deviated plea in Superior Court. (*Id.*) Plaintiffs have not attempted to disprove these facts set out in their own judicially noticeable criminal case records, and therefore they have conceded them.[2]

Plaintiffs' cited authority *Bean v. Matteucci*, 986 F.3d 1128 (9th Cir. 2021) is distinguishable. That case applied the *Younger* "irreparable harm" exception arising out of a state court order authorizing Oregon to forcibly administer antipsychotic medication to restore a pretrial detainee's competency to stand trial. *Id.* at 1134. The Ninth Circuit found that the detainee's claim implicated a "particularly severe" and "great and immediate" interference with the detainee's physical liberty which raised due process issues separate and apart from the disposition of the criminal case and which could not be fully vindicated after

---

[2] Plaintiffs' Response contention that the Court cannot consider Plaintiffs' state court criminal case records [Exhibits 4–13B] is perplexing. Plaintiffs did not object to Adel's Motion for Judicial Notice of Exhibits 3–13B, which are inclusive of Plaintiffs' state court criminal case records [Exhibits 4–13B]. (Docs. 33, 44). Accordingly, the Court should grant the Motion and consider those Exhibits. Further, when adjudicating a motion to dismiss, a court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). The Court properly should reject FAC allegations contradicted by Plaintiffs' own criminal case records.

trial due to pretrial administration of the medication. *Id.* at 1134–36. In contrast, as discussed above, plea-bargaining is a regular and integral part of the disposition of a criminal defendant's criminal charges by agreement, and a criminal defendant is able to raise constitutional challenges to plea-bargaining within the context of his criminal case, so his constitutional rights can be fully vindicated through the Arizona state court review process. *See also Brown v. Ahern*, 676 F.3d 899, 900 (9th Cir. 2012) (alleged violation of speedy trial rights did not qualify for "irreparable harm" exception, because criminal defendant could obtain a vindication of those rights on appeal in the state court forum).

Because the *Younger* prongs are met and no *Younger* exception applies, *Younger* abstention and dismissal is mandatory. *See, e.g.*, *Miller v. Cnty. of Nassau*, 467 F.Supp.2d 308, 317–18 (E.D. N.Y. 2006) (*Younger* dismissal where criminal defendants' claims arose out of district attorney's plea policy).[3]

## II.     AACJ lacks standing to sue.

As a preliminary matter, AACJ's claimed injury is not judicially redressable under the FAC's factual and legal theories. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (describing elements for standing). Significantly, there is a mismatch between AACJ's claimed injury from the plea policies and the FAC's § 1983 legal theories: the FAC does not allege that <u>AACJ or its members</u> suffer constitutional violations under Fourteenth Amendment due process, the Sixth Amendment, or Fourteenth Amendment state-created liberty interests; instead, the FAC centers these legal theories on the alleged experiences of <u>criminal defendants</u>. *Cf. LA All. for Hum. Rts. v. Cnty. of L.A.*, 14 F.4th 947, 958 (9th Cir.

---

[3] Albeit in unpublished cases, many federal district courts have applied *Younger* and dismissed claims seeking to enjoin state criminal court proceedings based upon the prosecution's alleged plea practices. *Davis v. McJunkins*, No. 4:20-cv-4030, 2020 WL 1932915 (W.D. Ark. Apr. 21, 2020); *Lane v. Bishop*, No. 5:19-00135, 2019 WL 3059834, at *4–5 (S.D. W. Va. Jun. 14, 2019); *Moreno v. Zavedra,* No. CIV 17-432-TUC-CKJ, 2018 WL 6172125. at *4 (D. Ariz. Nov. 26, 2018); *Knuth v. Schrader*, No. 16-cv-00559-GPG, 2016 WL 915876. at *1–2 (D. Colo. Mar. 10, 2016); *Casertano v. Kerwin*, No. 3:09-cv-1853 (CFD), 2010 WL 3257643, at *4 (D. Conn. Aug. 11, 2010); *Thornton v. Okla. Cnty. Public Defender*, No. CIV-07-317-D, 2007 WL 4390618, *5–6 (W.D. Okla. Dec. 11, 2007).

2021) (addressing mismatch between organization plaintiff's factual and legal theories).

Indeed, AACJ fails to cite any case in which an organization had organizational or associational standing to sue under § 1983 to vindicate someone else's constitutional rights. *Cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363, 366 (1982) (organization's standing to challenge practices under Fair Housing Act of 1968); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 659 (9th Cir. 2021) (organizations' standing to challenge immigration restrictions under Administrative Procedure Act); *Pac. Shores Properties, L.L.C. v. City of Newport Beach*, 730 F.3d 1142, 1166–67 (9th Cir. 2013) (Fair Housing Act); *Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1100 (9th Cir. 2004) (Fair Housing Amendments Act); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 902 (9th Cir. 2002) (Fair Housing Act).

But AACJ has waived any argument on third-party standing by failing to address this argument when raised by Adel. (*See* Doc. 40 at 17; Doc. 49 at 12–16); *see also Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (holding failure to raise argument in response to motion for summary judgment constitutes waiver). Because the FAC's legal theories are too far removed from AACJ's factual theories—even if taken as true—to establish direct standing, this Court should dismiss AACJ from this lawsuit.

**A.  AACJ lacks "organizational" standing to sue.**

Adel's Rule 12(b)(1) motion raised the lack of fact allegations showing that the AACJ was compelled to divert resources to pursue training and other activities as a direct consequence of EDC plea policies. (Doc. 40 at 12–15). "When the defendant raises a factual attack [under Rule 12(b)(1)], the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[T]he party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). If "the existence of jurisdiction turns on disputed factual issues," it falls to the district court to "resolve those factual disputes itself." *Leite*, 749 F.3d at 1121–22 & n.3.

9

Here, rather than support its contentions with competent proof through affidavits and primary documents (such as alleged training materials, rules proposals, legislative proposals or financial documents) that specifically explain the alleged diversion of resources being directly attributable to EDC plea policies—as opposed to the way Arizona's judiciary has structured the EDC—AACJ simply reiterates its vague and conclusory allegations. (Doc. 49 at 13–14). But bare allegations cannot defeat a Rule 12(b)(1) motion. *Cf. E. Bay Sanctuary*, 993 F.3d at 663 (summarizing declarations supporting organizational standing based on diversion of "significant resources"); *see also id.* at 684–85 (Paez, J., concurring) (same). Indeed, "[o]rganizations divert resources when they alter their resource allocation to combat the challenged practices, but not when they go about their business as usual." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021) (cleaned up). Because AACJ has—at best—established nothing more than business as usual in asserting (old) trainings and lobbying activities routinely part of its functions, it fails to carry its burden.

**B.     AACJ lacks "associational" standing to sue.**

To establish associational standing, an organization must demonstrate that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

The disconnect between AACJ's factual and legal theories precludes AACJ standing based on its members' ability to "have standing to sue in their own right." *Hunt*, 432 U.S. at 343. In particular, individual AACJ members—criminal defense attorneys—would not have claims based on Fourteenth Amendment due process, Sixth Amendment right to counsel, or Fourteenth Amendment state-created liberty interest in preliminary hearings. AACJ does not allege that its members have experienced a complete deprivation of their right to practice law. *See Conn v. Gabbert*, 526 U.S. 286, 292 (1999). Nothing in the record supports this prong of the associational standing analysis.

Further, to prove the alleged coercion, alleged ethical quandaries, and alleged

10

ineffectiveness of representation, would require individualized proof from individual AACJ members discussing their alleged experiences in litigating individual EDC cases. *See Hunt*, 432 U.S. at 343. In response, AACJ claims—without citing any authority—that individual members are not necessary because AACJ challenges a "blanket policy." (*See* Doc. 47 at 14).[4] The FAC's reliance on individual AACJ member circumstances belies this unsupported argument. (Doc. 30, ¶¶ 116-19) And AACJ does not explain how it could prove alleged coercion, ethical dilemmas, and the ineffectiveness of its members without their participation. *Cf. Harris v. McRae*, 448 U.S. 297, 321 (1980) (holding that because free exercise claim requires "one to show the coercive effect of the enactment as it operates against him in the practice of his religion," "individual participation" was necessary); *Juv. Matters Trial Laws. Ass'n v. Jud. Dep't*, 363 F. Supp. 2d 239, 248 (D. Conn. 2005) ("[I]n order for the Association to argue that the terms and rates of the contracts are leading to ineffective representation for indigent individuals and families, it would have to argue that its own members currently are providing such ineffective representation. This argument likely would conflict with the interests of at least some of its members, who would also wish to address the issue themselves."). AACJ fails to establish standing to sue on behalf of its members.

**III.    Plaintiffs' claims fail as a matter of law.**

**1.**    As a preliminary matter, Adel did not "waive []" any argument about Plaintiffs' claims under the Sixth Amendment and the Fourteenth Amendment state-created liberty interest. (Doc. 47 at 15). Specifically, on Pages 17 through 22 of her Motion, Adel situated all three of Plaintiffs' claimed legal theories within the context of plea bargaining made permissible under decades of Supreme Court precedent, and she moved for their

---

[4] It is perplexing why AACJ improperly relies on an unpublished 1997 district court order that addressed "selective[] implement[ation]" of a policy and, contrary to Plaintiffs' legal theory, determined that individual organizational members were <u>necessary</u>. (*See* Doc. 47 at 14 (citing *Int'l Bhd. of Teamsters v. Am. W. Airlines, Inc.*, No. CIV-95-2924-PHX-RGS, 1997 WL 809760, at *5 (D. Ariz. Sept. 25, 1997))); *see also Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147 (9th Cir. 2019) (rejecting organizational and associational standing where organization challenged "blanket policy").

dismissal with prejudice. Further, all of Plaintiffs' claims rely on the same set of alleged operative facts and same general legal theory, *i.e.*, that prosecutors allegedly violate the constitutional rights of criminal defendants when prosecutors offer a lower initial plea deal within the context of EDC discovery limits and EDC time constraints (pre-arraignment), and warn criminal defendants that if not accepted, a subsequent plea deal will be harsher. There is no waiver.

**2.** Tellingly, in a lawsuit about plea-bargaining, Plaintiffs have failed to cite a single case about plea bargaining that supports their arguments. In her Motion, Adel addressed decades of Supreme Court and Ninth Circuit precedent supporting her approach to EDC plea bargaining. (Doc. 40 at 19–23). In contrast, Plaintiffs render *Bordenkircher*'s explanation of plea bargaining unrecognizable. Plaintiffs also inexplicably ignore *United States v. Ruiz*, 536 U.S. 622 (2002), in which the Supreme Court upheld plea bargaining in a "fast track" setting that resembles EDC.

In place of the Supreme Court's well-established guidance on permissible plea bargaining, Plaintiffs exclusively rely on cases that address the circumstance of a prosecutor adding new charges outside the context of plea bargaining. (Doc. 49 at 17–19 (collecting cases)). This analogy is inapt: the FAC complains about the prosecution making an initial lower plea offer on the filed charges combined with defendant's waiver of the preliminary hearing, while communicating a threat of withdrawing the initial lower plea offer and making a subsequent harsher plea offer on the same filed charges if the defendant rejects the initial plea offer/waiver. The criminal defendant continues to face the same range of sentence on the same charges that he did before rejecting the initial plea offer. There is no addition of charges under the FAC's complained-of scenario, at all.

Further, Plaintiffs ignore that the federal courts consistently reject constitutional challenges to plea bargaining involving a prosecutor's initial plea offer in consideration for the criminal defendants' waiver of a constitutional right, statutory right, or procedural right, combined with the prosecutor's threat of the addition of new charges, later carried out when the criminal defendant rejects the initial plea offer. *See Bordenkircher*, 434 U.S. at 363–65

(plea offer combined with threat of new indictment, later carried out); *United States v. Kent*, 649 F.3d 906, 912–14 (9th Cir. 2011) (plea offer coupled with threat of enhanced charges, later filed); *United States v. Morris*, 633 F.3d 885, 888 (9th Cir. 2011) (plea offer conditioned upon waiving right to seek release and requiring testimonial cooperation combined with threat of filing new information, later carried out; "the government premised the plea bargain on Morris giving up many rights. . . Relinquishment of such rights is an acceptable part of most plea bargains"); *United States v. Gamez-Orduno*, 235 F.3d 453, 462–63 (9th Cir. 2000) ("[I]n the context of pretrial plea negotiations vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right"; "the courts have concluded that threatening and then filing more severe charges as an outgrowth of plea negotiations does not violate due process."). Because prosecutors permissibly may demand the defendant's waiver of rights and other conditions in the plea-bargaining process, prosecutors lawfully can "make good on threats" if the defendant does not agree to the waiver of rights and/or other conditions as part of the plea. *See Kent*, 649 F.3d at 914. There is no impermissible coercion, vindictiveness, or violation of due process, Sixth Amendment rights, or state-created due process interests in these circumstances, because the criminal defendant does not have a constitutional right to any particular plea offer and is free to reject the prosecution's plea offer, and the prosecution is free not to make an offer, to make an offer on terms and conditions including defendant's waiver of rights, to withdraw the offer unless accepted, and to make a subsequent offer on different terms and conditions, including harsher terms and conditions. By definition a plea offer gives a criminal defendant a chance to resolve the case for a lesser punishment than the legislature has proscribed. If facing increased punishment for rejecting a plea offer were legally coercive, all plea bargaining would be legally coercive. But decades of federal jurisprudence already has rejected any such argument. *See supra*.

That a defendant's choice may be a "difficult" one does not make the plea bargaining coercive, vindictive or otherwise violative of the defendant's constitutional rights, particularly in view of the defendant's opportunity to seek advice from his defense counsel.

In *Bordenkircher*, the Court reasoned that the prosecutor's actions did not offend due process because the prosecutor had "no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution" and "Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion." 434 U.S. at 363, 365; *see also Chaffin v. Stynchcombe,* 412 U.S. 17, 31–32 (1973); *Morris*, 633 F3d at 888. A long line of cases confirms the constitutionality of plea bargaining where the prosecutor's offers get harsher with time. *See, e.g.*, *United States v. Goodwin*, 457 U.S. 368 (1982); *Williams v. Bartow*, 481 F.3d 492, 504 (9th Cir. 2007); *United States v. VanDoren*, 182 F.3d 1077, 1082 (9th Cir. 1999).

That the plea offer is made during an early stage when discovery and time is limited by applicable procedures does not cause the plea bargaining to violate the defendant's constitutional rights. *See Ruiz,* 536 U.S. at 628–33*; see also Morris*, 633 F.3d at 888 ("That the government made its offer at the outset of proceedings does not change our calculus"). Nor does plea bargaining violate the Constitution simply because the prosecution does not negotiate extensively or extends a "take or leave it" plea offer; the defendant does not have a constitutional right to a plea offer. *See id.* at 888–89. And there is no presumption of vindictiveness in the pretrial/plea bargaining setting, merely because the prosecution will have to proceed with preparation of its case, respond to defense motions and invocation of defendant's procedural rights, and dedicate resources to a trial, if the plea offer is rejected. *See Goodwin*, 457 U.S. at 381–83 ("[A] defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. . . . The possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the

14

defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted."); *United States v. Noushfar*, 78 F.3d 1142, 1146 (1998).

Thus, none of Plaintiffs' legal theories hold up under controlling precedent. This Court should dismiss with prejudice all three counts alleged in the FAC as a matter of law.

**3.** Finally, the judicially noticeable records offered by Adel [Doc. 40, Exhibits 1 – 13B] belie Plaintiffs' argument that MCAO's plea-bargaining isn't really plea-bargaining because it proceeds pursuant to a "blanket policy." (*See, e.g.*, Doc. 49 at 19). Like its arguments on organizational standing, Plaintiffs rely on their allegation of a "blanket policy" as an attempted panacea to cure the FAC's many ills—but simply repeating this assertion *ad nauseum* doesn't cure anything. This Court can—and should—take judicial notice of the actual applicable plea policy (Policy 7.1, Ex. 2; Doc. 40, Background, § I) established more than a year before the filing of the original Complaint, as well as the actual fact circumstances of Luckey's and Dromiack's criminal cases [Ex. 4 – 13B; *see also* Doc. 40, Background, §§ III, IV and Argument, § III at 20 – 22], rather than the alleged "blanket policy" of Plaintiffs' invention.

Regardless, nothing in Plaintiffs' cited case law indicates that a "blanket policy" is unconstitutional. Again, Plaintiffs' failure to cite any cases that address plea bargaining under these circumstances dooms their claims. Consistent with *Bordenkircher*, *Ruiz*, and other cases cited by Adel, this Court should dismiss Plaintiffs' claims.

## Conclusion

For these reasons, this Court should dismiss Plaintiffs' First Amended Complaint with prejudice.

**RESPECTFULLY SUBMITTED** this 5th day of November 2021.

15

                                ALLISTER ADEL
                                MARICOPA COUNTY ATTORNEY

                                By */s/ Ann Thompson Uglietta*
                                   ANN THOMPSON UGLIETTA
                                   CHARLES TRULLINGER
                                   JOSEPH I. VIGIL
                                Deputy County Attorneys
                                *Attorneys for Allister Adel Maricopa County Attorney*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 5, 2021, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable G. Murray Snow
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 622
401 West Washington Street
Phoenix, Arizona 85003

Honorable Eileen S. Willett
Magistrate Judge
United States District Court
Sandra Day O'Connor U. S. Courthouse, Suite 325
401 West Washington Street
Phoenix, Arizona 85003

Somil Trivedi (pro hac vice application forthcoming)
American Civil Liberties Union Foundation
Criminal Law Reform Project
915 15th St., NW
Washington, DC 20005
strivedi@aclu.org

Jared G. Keenan (027068)
Victoria Lopez (330042)
American Civil Liberties Union Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
jkeenan@acluaz.org
vlopez@acluaz.org
*Attorneys for Plaintiffs*

/s/ S. Rojas

S:\CIVIL\CIV\Matters\GN\2021\Luckey v. Adel 2021-1873\Pleadings\WORD\20211108 FINAL REPLY MTD FAC.docx