SKC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Samuel Luckey, et. al, | No.   CV 21-01168-PHX-GMS (ESW) |
| Plaintiffs, | |
| v. | **ORDER** |
| Rachel H. Mitchell, | |
| Defendant. | |

Plaintiffs Samuel Luckey, Aaron Dromiack, and Arizona Attorneys for Criminal Justice (AACJ), who are represented by counsel, have filed a First Amended Class Action Complaint for Declaratory and Injunctive Relief under 42 U.S.C. § 1983 against Maricopa County Attorney Rachel H. Mitchell in her official capacity. (Doc. 30.)[1] Pending before the Court is Plaintiffs' concurrently filed Motion for Class Certification, which Defendant opposes. (*See* Docs. 31, 37, 42.) Also before the Court are Defendant's Motion for Judicial Notice, which Plaintiffs oppose in part (*see* Docs. 33, 43, 44), and Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which is fully briefed. (*See* Docs. 40, 49, 53.)

The Court will grant Defendant's Motion to Dismiss and deny as moot the remaining Motions.

---

[1] Plaintiffs originally named prior Maricopa County Attorney Allister Adel in her official capacity, but on May 3, 2022, defense counsel filed a Notice of Substitution pursuant to Federal Rule of Civil Procedure 25(D), substituting current Maricopa County Attorney Rachel H. Mitchell for Allister Adel in her official capacity. (Doc. 58.)

1    **I.    Background**

2         In their First Amended Complaint, Plaintiffs allege the Maricopa County Attorney's

3    Office (MCAO) has a policy of warning those charged with crimes in the County's Early

4    Disposition Courts (EDCs) that if they reject an initial plea offer or exercise their right to

5    a preliminary hearing, the next offer will be "presumptively harsher" or even "substantially

6    harsher," thereby punishing people who simply choose to exercise their rights.  (Doc. 30

7    at 2.)  Plaintiffs claim they are being coerced into accepting pleas that require giving up

8    their right to preliminary hearings, which harms them because they must accept the terms

9    offered without any examination of witnesses or a probable cause determination by a judge

10   or grand jury and without being given the benefit of any discovery beyond a police report.

11   (*Id.* at 2−3.)  Plaintiffs relevantly allege as follows:

12        EDCs were originally created to "provide incentives to early pleas and earlier

13   treatment" for individuals charged with illegal drug use and possession of drug

14   paraphernalia, and the Maricopa County Court's website claims that "most cases resolved

15   in EDC are diverted into a drug treatment program." (*Id.* at 7.)  Despite this claim, County

16   Court data from 2018 shows that only 8.0% of EDC cases resulted in diversion, and from

17   January 2017 to January 2021, only 6.7% of cases resulted in diversion.  (*Id.* at 7−8.)

18   Further, the MCAO is sending an increasing number of criminal cases through EDCs, and

19   from 2019 to 2021, approximately 40% of all criminal cases were sent to EDCs, of which

20   at least 30% "involved no drug-related charges whatsoever." (*Id.* at 8.)

21        Defendant's policy of making substantially harsher plea offers to those who refuse

22   to take an initial plea or waive preliminary hearings is unique to the EDCs and goes against

23   the MCAO's broader policies, which require Deputy County Attorneys (DCAs) to

24   critically weigh the circumstances of each case when offering pleas, including by engaging

25   in discussion and negotiations with defense attorneys.  (*Id.* at 8−9.)  By contrast, in the

26   EDCs, the DCAs make initial plea offers without any discussions or negotiations with

27   defense attorneys and while learning next to nothing about the defendants.  (*Id.* at 9.)

28

The MCAO uses this policy to coerce quick, low-cost pleas by, among other things, providing EDC defendants nothing more than a police report prior to a preliminary hearing and forcing them to choose between accepting an initial plea without the benefit of any further discovery or having to face a harsher or *substantially* harsher plea offer in exchange for additional discovery after a preliminary hearing.  (*Id.* at 3, 9.)

Detaining individuals without a meaningful, adversarial bail review is another vital feature of how the MCAO achieves quick pleas.  (*Id.* at 10.)  All arrestees have the right to an initial appearance at which a magistrate makes several critical decisions, including whether to appoint a public defender and whether the arrestee should be detained or released pending trial.  (*Id.* at 9.)  During the initial appearance, the magistrate makes the release decision based solely on a "probable cause statement" from police, which is normally only a few paragraphs long and is told only from the police's perspective.  (*Id.* at 10).  Indigent arrestees, who have not yet been appointed a public defender, are unable to challenge the probable cause statement or to examine the police officers who made it, and this often results in their being detained under unaffordable cash bail.  (*Id.* at 9–10.)  Studies show that detention while awaiting trial significantly increases the likelihood of a defendant "pleading out" or doing so more quickly; being detained also makes it more difficult for these individuals to participate in their own defenses.  (*Id.* at 9–10.)

Following the initial appearance, indigent arrestees are typically appointed a public defender the day before the status conference, at which time the DCA sends the accused the police report and a plea offer, which often contains the following warning:

> THE OFFER IS WITHDRAWN IF THE WITNESS PRELIMINARY HEARING IS SET OR WAIVED.  THE OFFER MAY BE CHANGED OR REVOKED AT ANY TIME BEFORE THE COURT ACCEPTS THE PLEA. *NOTE: COUNTY ATTORNEY POLICY DICTATES THAT IF THE DEFENDANT REJECTS THIS OFFER, ANY SUBSEQUENT OFFER TENDERED WILL BE SUBSTANTIALLY HARSHER.

(*Id.* at 10.)  If the parties appear for a status conference, this is typically the last time the DCA will allow the criminal defendant to waive his or her right to a preliminary hearing, which could result in acceptance of the plea at that time or continuation toward trial while negotiations continue under the plea offer.  (*Id.* at 15.)

Between the initial appearance and first status conference, DCAs typically refuse to provide accused persons or their counsel any additional information beyond the police report, such as witness statements, body camera footage, or drug test results, even if they have information that could exonerate the person, eliminate one or more charges, or mitigate the sentence.  (*Id.* at 13.)  Although Arizona criminal discovery rules require prosecutors to provide discovery at the preliminary hearing, if a criminal defendant waives the preliminary hearing, prosecutors can avoid this requirement and claim they do not have to provide any discovery.  (*Id.*)  For this reason, defendants and their attorneys often seek continuances to conduct their own investigations, which delays the case and, for those detained, extends the amount of time in custody.  (*Id.* at 13, 14.)  AACJ members practicing in EDCs must devote limited resources to such things as obtaining records and tracking down and interviewing witnesses who are often not identified in the police report, only to have to duplicate their investigative efforts after receiving discovery if the case proceeds to a preliminary hearing.  (*Id.* at 13.)

Arizona Rule of Criminal Procedure 15.8 requires that, when the State files an indictment or information in superior court and extends a plea offer to the defendant, it must provide discovery and give the defendant 30 days to consider the offer.  (*Id.* at 14.)  But because status conferences in EDCs occur before prosecutors file an indictment or information in superior court, these protections do not apply in the EDCs.  (*Id.*)  There are no statutes or Arizona Rules of Criminal Procedure that specifically refer to or govern EDCs.  (*Id.* at 14.)

EDC defendants and their attorneys confirm that Defendant's policy of forcing criminal defendants to accept or reject an initial plea, often while being detained, without the right to meaningful discovery or the essential protections of a preliminary hearing,

"actually occurs—and it harms them." (*Id.* at 19.)  Each of the named Plaintiffs in this action was arrested on drug-related or other criminal charges, referred to EDCs, and informed if they failed to waive their preliminary hearings, they would receive harsher plea offers than those initially presented. (*Id.* at 19−21.)

Plaintiff Samuel Luckey was arrested on drug and weapons charges based on hearsay evidence. (*Id.* at 19.)  At Mr. Luckey's initial appearance, the magistrate imposed a $10,000 cash-only bond, which Mr. Luckey had no meaningful opportunity to dispute, resulting in his having to remain in jail. (*Id.*)  In the meantime, the prosecuting DCA denied Mr. Luckey any discovery except a redacted police report and offered him a plea that included a felony conviction with a two- to five-year prison term, which contained the MCAO's boiler-plate warning threatening a harsher sentence if Mr. Luckey rejected the plea offer and requested a preliminary hearing. (*Id.* at 20.)  At his status conference, Mr. Luckey told the prosecutor and judge that he had "no choice but to waive the preliminary hearing because prosecutors were not disclosing any additional evidence for him to make an informed decision." (*Id.*)  By then, he had already spent three months in pre-trial detention, missed the birth of his daughter, and lost both his food stamps and unemployment insurance because he was unable to post bond and had not been given any meaningful bail review. (*Id.*)  Despite Mr. Luckey's statements at the status conference that he felt he had no choice but to waive a preliminary hearing, the DCA said nothing, and the judge accepted Mr. Luckey's waiver. (*Id.*)

Plaintiff Aaron Dromiack struggles with alcohol abuse disorder. (*Id.* at 20.)  During a relapse in June 2021, Mr. Dromiack, while drunk, locked his fiancé out of the house, and she called police. (*Id.* at 20.)  When the police arrived, Mr. Dromiack answered the door voluntarily, and the police tackled and beat him on the ground, causing him to have to go to the VA hospital for facial and neck contusions, disc herniation, bruises, swelling, and severe pain. (*Id.*)  During the assault, Mr. Dromiack resisted, and despite the police being the aggressors, he was arrested for aggravated assault. (*Id.*)  As of the filing of the First Amended Complaint, Mr. Dromiack was being offered a 1.5-year prison term for the

aggravated assault charge.  (*Id.*)  Despite Mr. Dromiack's claim of self-defense, the prosecuting DCA has refused to provide body worn camera (BWC) footage that could exonerate Mr. Dromiack or at least shed light on the incident.  (*Id.* at 21.)  The DCA explained in an email to Mr. Dromiack's defense attorney that "EDC is a court of limited discovery and the BWC is generally unavailable at this stage." (*Id.*)  The DCA confirmed that if Mr. Dromiack affirms his right to a preliminary hearing, the next plea offer will be "presumptively harsher." (*Id.*)  Despite the MCAO's claim that EDCs exist to divert people like Mr. Dromiack with substance abuse disorders away from the criminal justice system, Mr. Dromiack has also not been offered any diversionary or treatment options.  (*Id.* at 20.)

Michael Calhoun was charged with a drug offense relating to a "$20 drug sale," for which he was offered a plea of "nothing lower than 9.25 years in prison" and was told "the next offer would get substantially harsher" if he failed to waive his preliminary hearing. (*Id.* at 21.)  Despite being a clear candidate for diversion to drug treatment, Mr. Calhoun has not been offered diversion from incarceration.  (*Id.*)  Instead, the MCAO is using his prior drug offenses, for which it also did not offer him any diversion or treatment, to justify its current, prison-only offer.  (*Id.* at 21−22.)

Defense attorneys for these and other defendants who have been or are being pressured to forgo their rights and plead guilty in the EDCs acknowledge that the MCAO's alleged "Retaliation Policy" is a systemic problem that "has significantly hindered these attorneys' ability to represent their clients." (*Id.* at 25−26.)

Plaintiffs propose two plaintiff classes in this action:

> (1) All current and future people whom the MCAO has charged and assigned to the EDCs and who are subject to MCAO's blanket policy, practice, or custom of making or threatening to make plea offers harsher in response to people exercising their right to a preliminary hearing and/or trial, but who have not yet made the decision to affirm or waive their preliminary hearing, or reject or accept their initial plea offer (the "Pre-Waiver Class"); and

> (2) All current and future people whom the MCAO has charged and assigned to Maricopa County's EDCs, and who are subject

to MCAO's blanket policy, practice, or custom of making or threatening to make plea offers harsher in response to people exercising their right to a preliminary hearing and/or trial, but who have waived their preliminary [hearing] and/or rejected their initial plea offer (the "Post-Waiver Class").

(*Id.* at 26−27.)

Plaintiff Dromiack seeks to represent the Pre-Waiver Class and Plaintiff Luckey seeks to represent the Post-Waiver Class. (*Id.* at 27.)  Plaintiffs claim both classes "independently satisfy the numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Federal Rule of Civil Procedure 23(a), and both independently satisfy the requirements for certification under Rule 23(b)(2) or, in the alternative, 23(b)(1)."  (*Id.* at 27−28.)

Plaintiffs bring three class-wide claims.  In Count One, they claim Defendant "maintains and executes an official, blanket policy, practice, or custom of making plea offers in the EDCs 'substantially harsher' in response to people exercising their right to a preliminary hearing and/or trial" in violation of the Fourteenth Amendment Due Process Clause.  (*Id.* at 29.)  They allege that this "Retaliation Policy" is vindictive and punishes people for exercising their statutory, procedural, or constitutional rights. (*Id.*)  In Count Two, they claim the "Retaliation Policy" excessively burdens the right to trial, in violation of the Sixth Amendment.  (*Id.* at 30.)  In Count Three, they claim the "Retaliation Policy" deprives EDC defendants of a state-created liberty interest to a preliminary hearing, in violation of the Fourteenth Amendment. (*Id.* at 30−31.)[2]

As relief, Plaintiffs seek (1) a declaratory judgment, stating that "Defendant's blanket policy, practice, or custom of making plea offers in the EDCs harsher in response

_____

[2] Because at least one named Plaintiff was in custody at the time Plaintiffs initiated this action, the Court screened the original Complaint pursuant to 28 U.S.C. § 1915A(a) and determined that Plaintiffs had adequately stated claims for relief and directed Defendants to answer. (Doc. 10.)  The allegations in the First Amended Complaint are substantively the same, with the only material difference being the substitution of Plaintiff Dromiack for Plaintiff Calhoun as the proposed class representative of the Pre-Waiver Class.

1   to people exercising their right to a preliminary hearing and/or trial violates the Fourteenth

2   Amendment"; (2) a declaratory judgment, stating that this "blanket policy and practice . . .

3   violates the Sixth Amendment"; (3) as to both classes, a permanent injunction "prohibiting

4   Defendant from making or threatening to make plea offers in the EDCs harsher in response

5   to people exercising their right to a preliminary hearing and/or trial"; and (4) as to the

6   Post-Waiver Class, a permanent injunction prohibiting Defendant from "(1) asserting the

7   preliminary-hearing waiver or plea agreement itself as a basis for opposing any class

8   member's attempt to withdraw their preliminary-hearing waiver or plea . . . ," and from

9   "(2) retaliating against any class member for seeking or winning such a withdrawal."

10  (*Id.* at 31−32.)  Plaintiffs also seek reasonable attorneys' fees and costs and any further

11  relief the Court deems just and proper.  (*Id.* at 32.)

12  **II.   Defendant's Motion to Dismiss**[3]

13       **A.   Federal Rule of Civil Procedure 12(b)(6)**

14       Dismissal of a complaint, or any claim within it, for failure to state a claim under

15  Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable

16  legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"

17  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting

18  *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining

19  whether a complaint states a claim under this standard, the allegations in the complaint are

20  taken as true and the pleadings are construed in the light most favorable to the nonmovant.

21  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  A

22  pleading must contain "a short and plain statement of the claim showing that the pleader is

23  entitled to relief."  Fed. R. Civ. P. 8(a)(2).  But "[s]pecific facts are not necessary; the

24  statement need only give the defendant fair notice of what . . . the claim is and the grounds

25  upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation

26  omitted).  To survive a motion to dismiss, a complaint must state a claim that is "plausible

27  _____

28       [3] Because this Motion, if granted, will result in dismissal of this action and thereby moot Plaintiffs' Motion for Class Certification, the Court will discuss the Motion to Dismiss first.

- 8 -

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Where the plaintiff is a pro se prisoner, the court must "construe the pleadings liberally and [] afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment.  *Id.*

### B.    Discussion

In her Motion to Dismiss, Defendant argues that the Court must dismiss this action under the *Younger* abstention doctrine; Plaintiffs' claims fail as a matter of law; and the AACJ must separately be dismissed for lack of standing.

#### 1.    *Younger* Abstention

The abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), prevents a federal court in most circumstances from directly interceding in ongoing state criminal proceedings.  The *Younger* abstention doctrine applies while a case works its way through the state appellate process, if a prisoner is convicted.  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989).  Where *Younger* abstention applies, the federal action must be dismissed.  *See Beltran v. State of Cal.*, 871 F.2d 777, 782 (9th Cir. 1988), as amended on denial of rehearing (March 30, 1989).

*Younger* abstention is an "extraordinary and narrow exception" to the "general rule"

that federal courts should not decline jurisdiction.  *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017).  "'[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.'"  *Id.* (quoting *New Orleans Pub. Serv., Inc.*, 491 U.S. at 368.)  *Younger* abstention is appropriate when:

> (1) there is an ongoing state judicial proceeding;
>
> (2) the proceeding implicates important state interests;
>
> (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and
>
> (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding.

*Page v. King*, 932 F.3d 898, 901–02 (9th Cir. 2019).

An exception to *Younger* abstention exists "where the danger of irreparable loss is both great and immediate."  *Younger*, 401 U.S. at 45; s*ee also Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) (finding that "[d]eprivation of physical liberty by detention constitutes irreparable harm," and that the irreparable harm exception to *Younger* abstention applies when "'full vindication of the [constitutional] right necessarily requires intervention before trial'") (quoting *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992)).  Where a plaintiff asserts an exception to abstention, the plaintiff bears the burden of establishing that the exception applies.  *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

Defendant argues that *Younger* abstention applies here for the following reasons.  First, prospective class representatives Luckey and Dromiack were subject to ongoing state court criminal proceedings when Plaintiffs filed the First Amended Complaint.  Second, the state has "an important interest in enforcing its criminal statutes and maintaining the integrity of its criminal proceedings free from federal interference," *Kelly v. Robinson*, 479 U.S. 36, 49 (1986); *We Are America v. Maricopa Cnty. Bd. of Supervisors*, 386 F. App'x 726, 727 (9th Cir. 2010)).  Third, there are no procedural bars that would prevent Plaintiffs from raising their constitutional challenges in their state court criminal proceedings or on

appeal. And fourth, Plaintiffs' requested relief would interfere with ongoing state court criminal proceedings, including the plea-bargaining process; waivers of preliminary hearings; plea agreements; and judicial orders regarding pleas and waivers, sentences based on pleas, and motions to withdraw or restate pleas in thousands of putative class members' state court criminal proceedings. (Doc. 40 at 13−14.)

As to the first two prongs of the *Younger* analysis, Plaintiffs do not dispute the existence of ongoing state court criminal proceedings, that these proceedings implicate important state interests, or that the allegations in the FAC are sufficient to establish both these prongs. Plaintiffs argue instead that *Younger* abstention does not apply here because Plaintiffs only challenge a distinct aspect of MCAO prosecutors' pre-indictment, pretrial, out-of-court conduct. (Doc. 49 at 7.) This argument pertains to the fourth prong of the *Younger* abstention analysis—whether the relief Plaintiffs' request in this action "seeks to enjoin or has the practical effect of enjoining [an] ongoing state judicial proceeding." Plaintiffs maintain it does not, arguing that the conduct they seek to enjoin is separate from the merits of the Plaintiffs' criminal prosecutions. (*Id.*) Plaintiffs also argue that, because the plea offers at issue occur pre-indictment and are often fleeting, Plaintiffs lack opportunity to challenge Defendant's allegedly retaliatory plea policy in their state court proceedings. (*Id.*) Finally, Plaintiffs argue that, even if *Younger* does apply, abstention would not be appropriate in this action because Plaintiffs face irreparable harm.

To support that Defendant's allegedly retaliatory plea policy does not implicate or interfere with any ongoing state court criminal proceedings, Plaintiffs principally rely on *Gerstein v. Pugh*, 420 U.S. 103 (1975). (Doc. 49 at 8.)

In *Gerstein*, Florida criminal detainees brought a class action constitutional challenge in federal court to the Dade County Attorney's policy of subjecting individuals charged by county prosecutors on "information" to prolonged detentions without a preliminary hearing. 420 U.S. at 106−07. The District Court enjoined the policy as unconstitutional, and the Supreme Court affirmed in relevant part, finding that "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to

detention." *Id.* at 126.  As relevant here, the Court also noted that "[t]he District Court correctly held that respondents' claim for relief was not barred" under *Younger.  Id.* at 107 n.9.  The Court reasoned both that (1) the issue of pretrial detention could not be raised by the criminal defendant in defense of the criminal prosecution, and (2) "[t]he order to hold a preliminary hearing could not prejudice the conduct of the trial on the merits." *Id.*  Citing *Gerstein*, the Ninth Circuit in *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018), held that *Younger* did not bar a federal court from hearing a state criminal defendant's constitutional challenge to being denied an adversarial bail hearing, finding that "the issues raised in the bail appeal are distinct from the underlying criminal prosecution and would not interfere with it."

Plaintiffs argue that, like the pretrial detention and denial of an adequate bail hearing at issue in *Gerstein* and *Arevalo*, Defendant's allegedly retaliatory plea policy occurs prior to indictment and "does not affect the state's ability to continue prosecuting its criminal case." (Doc. 49 at 8.)  They maintain that the plea policy "sits apart from and does not prejudice any trial on the merits," and that, regardless of how this Court ultimately rules on the constitutional issues, "the state's criminal proceedings against the Plaintiffs will not be impeded." (*Id.*)

Defendant argues that *Gerstein* and *Arevalo* do not apply here because the federal court relief in those cases, requiring an evidentiary hearing prior to pretrial detention and requiring an adversarial bail hearing, "would have no effect on the substantive processing and disposition of criminal charges in state criminal court cases." (Doc. 53 at 5.)  In contrast, Defendant argues that plea bargaining is an essential part of the criminal prosecution, which can, and often does, lead to final disposition of criminal charges via a guilty plea, plea colloquy, conviction, and sentencing in state criminal court. (*Id.*)  Defendant argues that, because of this, Plaintiffs' requested relief "would have the effect of enjoining plea bargaining and concomitant disposition of criminal charges by agreement at successive stages of state court criminal cases." (*Id.*)  Such relief, Defendant claims, would have the "practical and substantive effect" of interfering with the processing and

disposition of criminal charges by plea agreement in state court criminal proceedings.  (*Id.*)

In making these arguments, Defendant urges an expansive interpretation of what constitutes interference in a state court proceeding for purposes of *Younger*, citing to case law outside the *Younger* abstention context for the proposition that plea bargaining is considered an integral part of the criminal court process.  (Doc. 53 at 4.)  *Santobello v. New York*, upon which Defendant relies, affirmed that "disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice," which, when "[p]roperly administered, [] is to be encouraged."  404 U.S. 257, 260 (1971).  The *Santobello* Court also recognized that there is an "adjudicative element" in accepting a plea.  *Id.* at 262.  This was in the context of noting that the rules governing pleas in federal court require the judge to set forth the factual basis for the plea on the record, determine that the plea is voluntary and knowing, and if it is induced, to set forth the promises made to the defendant to procure the plea.  *Id.* at 262−63.

These findings, however, do not support Defendant's contention that the declaratory and injunctive relief Plaintiffs seek regarding Defendant's allegedly retaliatory plea policies would have "the practical effect of enjoining the ongoing state judicial proceeding."  *Page*, 932 F.3d at 902.  *Santobello* dealt only with whether a New York state criminal defendant was entitled to a new trial in state court due to the prosecutor's failure at sentencing to abide by the promises made by the state to induce the plaintiffs' guilty plea.  *Santobello* did not involve or address any federal court abstention issues, and its affirmation of the importance of plea bargaining as an important feature of the criminal justice process, while potentially relevant to the merits of Plaintiffs' claims in this action, does not support that plea bargaining constitutes a state court judicial proceeding for purposes of *Younger* abstention or that the relief Plaintiffs seek here, if granted, would hinder any state court judicial proceedings.

As in *Gerstein* and *Arevalo*, the declaratory and injunctive relief Plaintiffs seek in this action is limited to pre-trial issues.  For the Pre-Waiver Class, the requested relief

would prevent DCAs from offering pleas in EDC criminal cases that are contingent upon defendants waiving their rights to a pretrial hearing and/or trial under the threat that failure to do so would result in a harsher plea offer.  For the Post-Waiver Class, it would prevent DCAs from relying on pleas and waivers obtained under such circumstances to oppose a class member's motion to withdraw from a plea or waiver prior to trial.  Although such relief could have the practical effect of reducing the number of initial pleas and waivers DCAs are able to obtain or are compelled to defend, requiring more cases to proceed to preliminary hearings or trial, it would not impact the state court's ability to perform its adjudicative function of conducting a plea colloquy and setting forth facts on the record in support of a plea, if accepted, or in support of withdrawal, if accepted but later withdrawn. It would also not impede the state court's ability to make a probable cause determination at a preliminary hearing, if that hearing is not waived; nor would it enjoin or have the practical effect of enjoining the state court from presiding over a criminal trial in the event the criminal defendant chose to reject or withdraw a plea and waiver.

Because Plaintiffs' requested relief is limited to pre-indictment and pre-trial plea negotiations and potential plea withdrawals, it would not "prejudice the conduct of the trial on the merits." *Gerstein*, 420 U.S. at 107 n.9.  At most, such relief would result in the state criminal court having to conduct probable cause determinations and trials that members of the Pre-Waiver Class might otherwise have waived or that members of the Post-Waiver class waived but seek to reinstate.  Similar to the requirements for holding evidentiary and bail hearings in *Gerstein* and *Arevalo*, such an outcome would have no practical impact on the factual or legal bases of the charges brought against state criminal defendants or the state court's ability to adjudicate the same. *See Arevalo*, 882 F.3d at 766 ("the issues raised in the bail appeal are distinct from the underlying criminal prosecution and would not interfere with it.")  The fourth prong of the *Younger* abstention criteria is therefore not met.

In the alternative, even if the Court were to accept Defendant's view that the relief Plaintiffs seek would enjoin or have the practical effect of enjoining a state court proceeding, *Younger* abstention would not apply unless Plaintiffs have an adequate

opportunity to raise constitutional challenges to Defendant's allegedly retaliatory plea policies in their state court criminal proceedings.  This means there must be an "absence of 'procedural bars' to raising a federal claim." *Commc'ns Telesystems Int'l v. California Pub. Util. Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999).  Plaintiffs have the burden of showing that "state procedural law" bars an "adequate" or "full and fair" opportunity to present their constitutional claims.  *Id.* (internal quotation marks and citation omitted).  Moreover, "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

Defendant argues there is no basis to conclude that Plaintiffs could not raise their constitutional challenges to Defendant's plea policies in their state court criminal proceedings, relying on cases showing that Arizona appellate courts regularly hear criminal defendants' constitutional challenges to the prosecution's plea bargaining.  (Doc. 40 at 13.)

Plaintiffs do not dispute that there is no procedural bar that would prevent them from raising constitutional challenges to Defendant's allegedly retaliatory plea policy on appeal if convicted.  But they argue this is insufficient because there is no viable avenue for them to challenge Defendant's plea policy in the state trial courts before harm occurs.  (Doc. 49 at 10.)  Instead, they must either accept an initial plea offer, which requires waiving their rights to a preliminary hearing, or reject the offer, after which any future offer will only become harsher, meaning the constitutional harm has already occurred.  (Doc. 49 at 10.)  In making this argument, Plaintiffs rely on *Meredith v. Oregon*, 321 F.3d 807, 820 (9th Cir. 2003), *amended sub nom. Meredith v. State of Oregon*, 326 F.3d 1030 (9th Cir. 2003), for the proposition that, to be considered an "adequate opportunity" to raise constitutional issues, the issues must be "timely decided," meaning *before* the alleged constitutional harm takes place.  (Doc. 49 at 10).

In *Meredith*, an Oregon property owner, Howard Meredith, filed a First Amendment challenge in federal court, seeking an injunction to a state law enforcement action, which

required him to immediately remove a sign from his property or pay the state to remove the sign.  321 F.3d at 810−811.  The federal court denied the State's motion to dismiss the action under *Younger* and issued a preliminary injunction, and the Ninth Circuit affirmed, finding that *Younger* did not apply because Meredith did not have an adequate opportunity to raise his constitutional claims in a state forum.  *Id.* at 818−820.  This was because, between his initial hearing before a state Administrative Law Judge (ALJ), and the ALJ's final order, Meredith changed the sign to comply with state law, but he was precluded from introducing his revisions to the ALJ because Oregon Administrative Rules did not permit the introduction of new evidence without the state agency's consent, and the state agency would not consent.  *Id.* at 810−811.  By then, Meredith had also filed an appeal in the Oregon Court of Appeals, but under the state's appellate court rules, the state had 30 days to respond, meaning Meredith could not pursue state court review before being required to remove his sign.  *Id.* at 819.  The Ninth Circuit found that, under "the unique posture of this case," the State's 30-day response period acted as a procedural bar to Meredith's obtaining state adjudication on the merits of his federal claims, reasoning that, after 30 days, the alleged constitutional violation would have already occurred.  *Id.* at 820.

Plaintiffs argue that similar procedural bars are apparent here, as evidenced by Plaintiff Luckey's inability to raise constitutional issues regarding Defendant's plea policy during his EDC status conference.  (Doc. 49 at 10.)  As alleged in the First Amended Complaint, when the magistrate asked Luckey if he would be waiving, Luckey raised numerous coercion-based concerns about Defendant's plea process, but the judge did not address Luckey's concerns or question the prosecutor; instead, he merely accepted Luckey's waiver.  (*Id.*)  Plaintiffs do not identify any procedural bar that would prevent Plaintiffs from raising constitutional issues at a status conference, but based on their allegations in the First Amended Complaint, the purpose of the status conference is only to determine whether the defendant has accepted a plea and waived the preliminary hearing or to set the case for trial, not to adjudicate any issues on the merits.  (Doc. 30 ¶¶ 51, 64.)  Luckey's alleged statements at the status conference also show he attempted to raise the

1    issue of coercion at that time but was not given a "full and fair" opportunity to do so.

2    *Commc'ns Telesystems Int'l*, 196 F.3d at 1020.  Construing the allegations in Plaintiffs'

3    favor, Plaintiffs are procedurally barred from raising substantive issues regarding the

4    constitutionality of Defendant's plea policy at their initial status conferences.

5           Plaintiffs further argue that EDC defendants do not have an adequate opportunity to

6    challenge Defendant's plea policy at a preliminary hearing because such hearings are only

7    intended to determine whether probable cause exists.  (*Id.*)  This is born out by Arizona's

8    Rules of Criminal Procedure, which state that the magistrate conducting a preliminary

9    hearing may admit evidence "only if it is material to whether there is probable cause to

10   hold the defendant for trial."  Ariz. R. Crim. P. 5.3; *see Brailsford v. Foster*, 393 P.3d 138,

11   142–43 (Ariz. Ct. App. 2017) ("The purpose of the preliminary hearing is not to conduct a

12   trial on the merits, but to determine whether a public offense has been committed and

13   whether there is sufficient cause to believe that the accused committed it.").

14          Absent any opportunity to present evidence regarding Defendant's allegedly

15   retaliatory plea policy at the preliminary hearing, the Court finds Plaintiffs lack the

16   opportunity to raise constitutional issues regarding that policy at that time.  Moreover,

17   according to Plaintiffs' allegations, even before a preliminary hearing takes place, EDC

18   criminal defendants either have to accept an initial plea offer that requires them to waive

19   their rights to a preliminary hearing or reject the plea and waiver, in which case, any future

20   plea offer will be harsher.  In either scenario, the alleged constitutional harm pursuant to

21   Defendant's plea policy takes place without an adequate opportunity for criminal

22   defendants to raise constitutional issues in their state court criminal proceedings.  Under

23   *Meredith*, the opportunity to raise these issues later at trial or on appeal is insufficient to

24   require *Younger* abstention because the alleged constitutional harm has already occurred.

25          Defendant argues that *Meredith* does not provide the required "unambiguous

26   authority" to find a procedural bar to Plaintiffs raising their constitutional claims because

27   *Meredith* was based on Oregon administrative procedures and administrative hearings, not

28   Arizona criminal procedure and criminal court proceedings, and its finding was based on

1   the unique posture of that case.  (Doc. 53 at 7.)

2   These arguments are unpersuasive.  What made the circumstances in *Meredith*
3   unique was that, given Meredith's inability to present new evidence to the ALJ without the
4   State's consent and that 30 days would elapse prior to the State having to answer an appeal
5   on the issue, Meredith was unable to obtain any timely review of his constitutional claim
6   in a state forum before the alleged constitutional harm took place.  Plaintiffs' allegations
7   in this action present similarly unique circumstances whereby Plaintiffs are subjected to
8   Defendant's allegedly retaliatory plea policies and the consequences of those policies in
9   their criminal prosecutions before having any meaningful opportunity to raise their
10  constitutional claims and have them addressed.  It is irrelevant for purposes of *Younger*
11  abstention that the procedural rules the Ninth Circuit found prevented timely review in
12  *Meredith* are from another state.  Defendant does not dispute that MCAO criminal
13  defendants are denied a meaningful opportunity to raise constitutional issues at their status
14  conferences or that Arizona's procedural rules for preliminary hearings prevent the
15  magistrate from addressing any substantive issues other than probable cause.  Under these
16  circumstances, the fact that criminal defendants may raise constitutional challenges to their
17  pleas on appeal of a criminal conviction is not enough to show they have an adequate
18  opportunity to seek relief in their state criminal proceedings, and the third criteria for
19  *Younger* abstention, that there be an adequate opportunity in the state proceedings to raise
20  Plaintiffs' constitutional challenges, is not met.

21  For the above reasons, *Younger* abstention is not required in this action, and the
22  Court will deny Defendant's Motion to Dismiss on this ground.[4]

23  ### 2.    Failure to State a Claim

24  Defendant argues that all three of Plaintiffs' claims must be dismissed for failure to
25  state a claim because they each rest on the legally invalid assertion that a prosecutor may
26  not exercise discretion to present an initial plea offer to a criminal defendant conditioned

27  _____

28  [4] The Court need not address Plaintiffs' alternative argument that the irreparable
    harm exception to *Younger* abstention applies.

on timely acceptance and waiver of a preliminary hearing, while warning the defendant that, if not accepted, any subsequent plea offer will be substantially harsher.  (Doc. 40 at 19−20.)  Defendant argues that it is well established that prosecutors have broad discretion in the exercise of plea negotiations, and criminal defendants have no constitutional right to a plea agreement; nor is the state required to offer one.  (*Id.* at 20 (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("There is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial")).

### a.      Count One: Fourteenth Amendment Due Process

The Supreme Court has recognized that "the guilty plea and . . . plea bargain[ing] are important components of this country's criminal justice system" and that, when "properly administered," plea bargaining can benefit both the prosecution and the defendant. *Bordenkircher v. Hayes*, 434 U.S. 357, 361 (1978) (citing *Blackledge v. Allison*, 431 U.S. 63, 71 (1977)) (internal quotation marks omitted).  Proper plea bargaining requires certain safeguards, such as the representation of counsel during plea negotiations, making a public record that a plea is knowingly and voluntarily made, and requiring that a prosecutor's plea-bargaining promises be kept.  *Bordenkircher*, 434 U.S. at 361 (citing cases).

The Fourteenth Amendment Due Process clause protects criminal defendants who exercise a legal right from prosecutorial retaliation, such as a prosecutor seeking a harsher sentence against a defendant in a new trial after that defendant successfully attacked his first conviction on appeal, *North Carolina v. Pearce*, 395 U.S. 711, 723−26 (1969), or the state re-indicting a misdemeanor defendant on felony charges after that defendant successfully appealed his misdemeanor conviction, *Blackledge v. Perry,* 417 U.S. 21, 27 (1974).  *Bordenkircher*, 434 U.S. at 363.  "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, . . . [and] to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'"  *Id.* (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 32−33 n.20 (1973)); *see also Adamson v. Ricketts*, 865 F.2d 1011, 1017 (9th Cir. 1988),

1  *abrogated on other grounds by Walton v. Arizona*, 497 U.S. 639 (1990) ("The Due Process

2  Clause of the Fourteenth Amendment guarantees against judicial and prosecutorial

3  vindictiveness.").

4       But, while the "unilateral imposition of a penalty upon a defendant" for choosing to

5  exercise a legal right violates due process, "there is no such element of punishment or

6  retaliation [in the plea-bargaining process] so long as the accused is free to accept or reject

7  the prosecution's offer." *Bordenkircher*, 434 U.S. at 363.

8       In the "give-and-take" of plea bargaining, prosecutors may attempt to induce a

9  guilty plea by "promises of a recommendation of a lenient sentence or a reduction of

10  charges, and thus by fear of the possibility of a greater penalty upon conviction after a

11  trial." *Id.* at 364.  Even though doing so may discourage the defendant from asserting his

12  right to trial, "the imposition of these difficult choices [is] an inevitable—and

13  permissible—attribute of any legitimate system which tolerates and encourages the

14  negotiation of pleas." *Id.* (quoting *Chaffin*, 412 U.S. at 31) (internal quotation marks

15  omitted).  Guilty pleas resulting from the "mutuality of advantage" to both the defendant

16  and the state "are not constitutionally forbidden." *Brady v. United States*, 397 U.S. 742,

17  752, 754 (1970) ("Brady's plea was not compelled even though the law promised him a

18  lesser maximum penalty if he did not go to trial").

19       Plaintiffs argue that they have stated a Fourteenth Amendment due process claim

20  because Defendant's plea policy is unconstitutionally vindictive.  (Doc. 49 at 18.)  To state

21  a due process claim based on prosecutorial vindictiveness, "[n]o actual showing of malice

22  or retaliatory motive is necessary." *Adamson*, 865 F.2d at 1017.  Instead, "vindictiveness

23  will be presumed when the circumstances surrounding the prosecutorial decision at issue

24  create the appearance of vindictiveness." (*Id.*)  A finding of actual vindictiveness requires

25  "producing direct evidence of the prosecutor's punitive motivation towards [the criminal

26  defendant]." *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007).  Whereas, to

27  establish a presumption of vindictiveness, the criminal defendant must only show a

28  "reasonable likelihood" that the prosecutor would not have taken a particular action but for

the defendant's exercise of a legal right. *Id.*

Plaintiffs argue that they can show actual vindictiveness because Defendant's plea policy "expressly requires, without exception, that prosecutors make plea offers harsher if individuals, like Mr. Luckey and Mr. Dromiack, exercise their rights to a preliminary hearing or trial." (Doc. 49 at 18.)  They argue that the wide latitude prosecutors possess does not permit them to penalize a defendant for exercising a constitutional or statutory right, which they claim is evidenced in this action by the threat of a harsher plea agreement, often printed at the top of the MCAO's plea offers and confirmed in emails from prosecutors, as alleged in the First Amended Complaint.  (*Id.*)

This argument fails because warning criminal defendants they will receive a harsher plea offer if they do not accept the initial offer to induce them to forfeit their rights to a preliminary hearing or trial is no different from the kinds of inducements in the plea-bargaining process that the Supreme Court has found constitutional, provided the defendant "is free to accept or reject the prosecution's offer."  *Bordenkircher*, 434 U.S. at 363; *see also Brady*, 397 U.S. at 754.  In arguing that such plea policies are actually vindictive, Plaintiffs misapply *Pearce*, 395 U.S. at 738, *Perry,* 417 U.S. 21, and other cases in which courts have found vindictiveness based on non-negotiated retaliatory actions prosecutors took *after* a criminal defendant exercised a legal right, not, as here, based on a criminal defendant's negotiated plea agreement to give up a constitutional right in exchange for an initial plea resulting in lesser charges or a lower sentence.

In *Bordenkircher*, the Supreme Court distinguished the due process violations in *Pearce* and *Perry*—in which prosecutors unilaterally penalized criminal defendants for exercising their rights to appeal a criminal conviction *after the fact* by retrying or reindicting those defendants on harsher charges—from negotiated plea-bargaining in which the Court recognized that both prosecutors and defendants "[have their] own reasons for wanting to avoid trial." *Bordenkircher,* 434 U.S. at 363.  In the plea-bargaining context, prosecutors are not prohibited from attempting to induce a guilty plea by making promises of a more lenient sentence or lesser charges than may be expected from going to trial.  *Id.*

1    Because of this, Plaintiffs' allegations regarding the blanket warnings attached to MCAO
2    plea offers and the reiteration of such in emails from DCAs, taken as true, are not direct
3    evidence of a punitive motivation and are insufficient to support a claim of actual
4    vindictiveness.  *Jenkins*, 504 F.3d at 699.

5         Plaintiffs also argue they can show that Defendant's plea policy is "presumptively
6    vindictive" because it (1) "explicitly retaliates in response to the assertion of a right," and
7    (2) it "applies to all defendants regardless of facts or circumstances."  (Doc. 49 at 18.)

8         As to their first argument, Plaintiffs once again conflate prosecutorial attempts to
9    arrive at a negotiated plea agreement, in which a criminal defendant voluntarily agrees to
10   give up certain constitutional rights in exchange for more lenient terms, with vindictiveness
11   and retaliation, such as courts have found when prosecutors impose a unilateral, non-
12   negotiated penalty after-the-fact.  None of the cases upon which Plaintiffs rely in their
13   Response support a presumption of vindictiveness based solely on a prosecutor making an
14   early plea offer contingent on the defendant giving up certain constitutional rights and
15   warning the defendant that rejection of the initial plea will result in a harsher offer.

16        In *United States v. DeMarco*, 550 F.2d 1224, 1226 (9th Cir. 1977), prosecutors
17   unilaterally added charges to a defendant's indictment after the defendant successfully
18   moved for severance and a change of venue, and the district court found that the
19   government had retaliated against the defendant for exercising his rights.  The Ninth Circuit
20   agreed, equating the prosecutors' imposition of new charges following the defendant's
21   successful venue change in *DeMarco* with the prosecutors' filings of new or enhanced
22   charges in *Blackledge* and *Pearce* after the defendants in those case successfully appealed
23   their criminal convictions.  *DeMarco*, 550 F.2d at 1227.  In drawing this parallel, the Court
24   recognized that, like the statutory right to appeal in *Blackledge* and *Pearce*, a change of
25   venue had substantially similar "due process overtones" that required protection.  Likewise,
26   in *Jenkins*, 504 F.3d at 699−700, prosecutors brought alien smuggling charges against a
27   defendant for the first time *after* she testified in her own defense at her trial on marijuana
28   charges, even though the state had possessed more than enough evidence to charge her with

alien smuggling beforehand and had made no attempt to do so.  The Ninth Circuit found that this sequence of events gave rise to "the 'reasonable or realistic likelihood' that the government's decision to file the new charge was motivated by a retaliatory purpose," raising a rebuttable presumption of vindictiveness against the defendant for exercising her right to testify in court.  *Id.* at 700−702.

These and similar cases following *Blackledge* and *Pearce*, upon which Plaintiffs rely, are distinguishable from this action because they involved only unilateral penalties imposed by prosecutors after the criminal defendants asserted a legal right, which occurred entirely outside the plea-bargaining context.  In contrast, Plaintiffs in this action are presented up front with plea offers contingent on giving up certain rights, which they are free to accept or reject.  Even though this allegedly places criminal defendants and defense counsel in difficult positions early in the criminal prosecution, "openly present[ing] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, d[oes] not violate the Due Process Clause of the Fourteenth Amendment."  *Bordenkircher*, 434 U.S. at 365.

Additional cases within the plea-bargaining context support that it is not unconstitutional for a prosecutor to require a criminal defendant to accept or reject an initial plea with only sparse knowledge of the prosecution's evidence against her.  *United States v. Ruiz*, 536 U.S. 622, 625 (2002), involved a "fast track" plea bargain in a federal case in which the criminal defendant, Angela Ruiz, was offered a plea that required her to waive her rights to indictment, trial, and appeal in exchange for a recommendation to the sentencing judge of a lighter sentence than would ordinarily apply under the applicable federal guidelines.  At the time of its plea offer, the government had turned over known information that could establish "the factual innocence of the defendant," and it acknowledged its continuing obligation to do so, but its plea offer required Ruiz to waive her right to receive impeachment information related to the government's informants or witnesses and information supporting any affirmative defenses she might be able to raise at a trial.  *Id.*  Ruiz rejected the initial offer and later pleaded guilty without the benefit of

the reduced charges.   On appeal, the Ninth Circuit held that the required waiver of impeachment information in the plea offer was unlawful, but the Supreme Court reversed, reasoning that "[w]hen a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees."  *Id.* at 628.

In reaching this conclusion, *Ruiz* relied on *Brady*, 397 U.S. at 757, and other Supreme Court cases that have upheld the constitutionality of plea agreements even when the defendants remained ignorant of many things, including the strength of the prosecution's case, the likely penalties they may incur, the admissibility of a confession, and other circumstances bearing on the likelihood of success at trial.  The *Ruiz* Court stated that

> this Court has found that the Constitution, in respect to a defendant's awareness . . . does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.

*Ruiz*, 536 U.S. at 630 (citing cases).

Similarly, the Ninth Circuit has found that threats of additional charges or of prosecutors seeking a higher sentence if a defendant does not accept a plea right away do not violate due process.  *See United States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir. 1996), *amended*, 140 F.3d 1244 (9th Cir. 1998) ("[d]uring plea negotiations . . . prosecutors may threaten additional charges and may carry through on this threat"); *see also United States v. Gamez-Orduno*, 235 F.3d 453, 463 (9th Cir. 2000) ("threatening and then filing more severe charges as an outgrowth of plea negotiations does not violate due process").  The fact that a plea offer requires a criminal defendant to relinquish certain rights is part and parcel of the plea-bargaining process and does not, on its own, create a presumption of vindictiveness.

As to Plaintiffs' second argument, it is unclear how having standard warnings atop most plea offers in EDCs, such that the warnings "apply to all defendants regardless of

facts or circumstances" of each case, makes the plea offers contained therein presumptively vindictive.  (Doc. 49 at 18.)  Plaintiffs do not allege that the substance of the plea offers are always the same and are made without regard to the individual charges and police reports or other documents pertaining thereto.  If anything, using a standard warning on all initial plea offers cuts against a showing of vindictiveness, which generally requires an individualized assessment of the circumstances.  *See Adamson v. Ricketts*, 865 F.2d 1011, 1017 (9th Cir. 1988), *abrogated on other grounds by Walton v. Arizona*, 497 U.S. 639 (1990) ("vindictiveness will be presumed when the circumstances surrounding the prosecutorial decision at issue create the appearance of vindictiveness.")  The facts alleged in the First Amended Complaint concerning Defendant's plea offers and the circumstances surrounding them fail to show either actual or presumptive vindictiveness.  *See United States v. Morris*, 633 F.3d 885, 889 (9th Cir. 2011) ("there is nothing fundamentally wrong with the prosecution's decision to present its best offer up front").

Based on the above, Plaintiffs have failed to state a Fourteenth Amendment due process claim based on Defendant's alleged plea policies in the EDCs, and the Court will dismiss this claim.

### b.    Count Two: Sixth Amendment

Plaintiffs' claim in Count Two is based on allegations that Defendant's plea policy penalizes those who exercise their right to trial and therefore violates the Sixth Amendment.  (Doc. 30 ¶¶ 146−152.)  This claim rests on the same core facts regarding Defendant's allegedly retaliatory plea policy underlying Plaintiffs' Fourteenth Amendment due process claim in Count One and likewise fails for the reasons already discussed.

Although Plaintiffs have an undisputed Sixth Amendment right to trial, Plaintiffs fail to cite any authority showing that prosecutors may not offer lesser charges or more favorable sentencing recommendations in exchange for a defendant giving up that right, even early in the criminal prosecution.  As stated in *Bordenkircher*, there is no constitutional violation in a plea bargain in which the criminal defendant is asked to give up a constitutional or statutory right "so long as the accused is free to accept or reject the

1    prosecution's offer." 434 U.S. at 363.

2         Plaintiffs again rely on caselaw outside the plea-bargaining context to construe a

3    constitutional violation, which courts have routinely found does not exist.  *See*

4    *Bordenkircher*, 434 U.S. at 363; *Brady*, 397 U.S. at 754; *Ruiz*, 536 U.S. at 630 (citing

5    cases); *Noushfar*, 78 F.3d at 1446.  Plaintiffs point out that, in *United States v. Jackson*,

6    390 U.S. 570 (1968), the Supreme Court found a portion of the federal Kidnapping Act

7    unconstitutional because it allowed the imposition of the death penalty following a jury

8    verdict, but it set forth no procedure for imposing the death penalty if a defendant pleaded

9    guilty.  (Doc. 49 at 22 (citing *Jackson*, 390 U.S. at 582, 583, 585).)  Plaintiffs also cite to

10   cases following *Jackson* in which the Ninth Circuit struck down a state sentencing scheme

11   whereby "defendants who went to trial could receive a sentence of death or life

12   imprisonment without possibility of parole, while defendants who pled guilty could receive

13   no more than life with the possibility of parole," *Grisby v. Blodgett*, 130 F.3d 365, 369 (9th

14   Cir. 1997), and a state statute, which effectively reserved the death penalty solely "for those

15   who chose to go to trial."  *Robtoy v. Kincheloe*, 871 F.2d 1478, 1479 (9th Cir. 1989).

16   Plaintiffs argue based on these cases that Defendant's blanket plea policy, as applied in the

17   EDCs, likewise impermissibly burdens criminal defendants' Sixth Amendment rights to

18   trial by issuing blanket threats of harsher penalties if they choose to exercise that right.

19   (Doc. 49 at 23.)

20        This argument is unpersuasive.  Unlike the *Jackson* line of cases, this action does

21   not involve the automatic, statutory imposition of a harsher sentence for a criminal

22   defendant found guilty at trial than the same defendant could lawfully receive upon

23   pleading guilty to the same offense.  That Defendant's alleged policies offer Plaintiffs the

24   possibility of lesser charges or lighter penalties than would otherwise be statutorily

25   permitted if prosecutors pursued the charges against them to the full extent of the law does

26   not make the inducement to avoid trial unconstitutional.  Because prosecutors are not

27   required to offer a plea, and criminal defendants are not required to accept one, Defendant's

28   policy of routinely offering more lenient charges or sentencing recommendations if the

plea offer is accepted right away do not subject Plaintiffs to any greater penalties than they would ordinarily face if not offered a plea or if they chose to reject a plea and go to trial. In other words, unlike in *Jackson*, et. al, the statutorily permissible penalty for the offense ultimately charged does not increase as a matter of law simply because the criminal defendant chooses to go to trial.  At most, having to accept or reject a guaranteed lesser penalty than they might later be offered or might ultimately receive if found guilty at trial confronts criminal defendants with a difficult choice.   But the Supreme Court has recognized such difficult choices as "an inevitable—and permissible—attribute" of the plea-bargaining process. *Bordenkircher*, 434 U.S. at 363; *see also Chaffin*, 412 U.S. at 31.

Plaintiffs lastly argue that is improper for DCAs to employ Defendant's allegedly retaliatory plea policy solely for the purpose of managing their caseloads.  (Doc. 49 at 23.) They argue that there are myriad other options to achieve the same goal that need not burden Plaintiffs' Sixth Amendment rights, including declining, dismissing, or diverting cases, which are more consistent with the MCAO's stated policy goals for EDCs.  (*Id.*)

Plaintiffs do not cite to any authority for the proposition that prosecutors lack discretion to offer pleas as a way to manage their caseloads, even when arguably more desirable options for expediting the resolution of criminal cases may exist.  Courts have long recognized that, in the plea-bargaining context, both prosecutors and defendants have their own, independent reasons for wanting to avoid trial, such that a plea bargain, when properly made and accepted, may mutually benefit both sides.  *See Bordenkircher*, 434 U.S. at 363; *Blackledge*, 431 U.S. at 71.  Although dismissing or diverting cases may be more consistent with the stated goals of the EDCs than making plea offers that contain standard warnings that the offers will become presumptively or substantially harsher if not accepted, this does not mean Defendant's plea policy is unlawful.  Failing to adhere to the stated intent of the EDCs, even if duplicitous, is not a constitutional violation.

For the above reasons, Plaintiffs fail to state a Sixth Amendment claim in Count Two, and the Court will dismiss this claim.

1          **c.      Count Three: Violation of State-Created Liberty Interests**

2          Plaintiffs' claim in Count Three is based on allegations that Defendant's allegedly

3   retaliatory plea policy violates Plaintiffs' Fourteenth Amendment rights to state-created

4   liberty interests, including state constitutional and criminal procedure provisions that

5   establish the right to a preliminary hearing and require the magistrate at that hearing to

6   make a probable cause determination.  (Doc. 30 ¶¶ 153−160.)

7          This claim necessarily fails for the same reasons Plaintiffs' Fourteenth Amendment

8   due process and Sixth Amendment claims fail.  Finding that the Arizona Constitution and

9   rules of criminal procedure create federally protected liberty interests does not mean that

10  MCAO prosecutors violate those interests by making an early plea offer contingent on the

11  criminal defendant waiving them.   Although Plaintiffs argue that the importance of a

12  preliminary hearing as codified in Arizona law shows that Defendant's plea policy, which

13  aims to deprive Plaintiffs of this right, is "unduly coercive," they do not cite to any caselaw

14  that supports treating these interests differently from the other interests already discussed

15  in the plea-bargaining context.  Nor have they stated a claim of coercion simply because

16  Plaintiffs know little about the prosecution's case beyond the initial probable cause

17  statement and police report when they are presented an initial plea offer.   "[T]he

18  Constitution . . . does not require complete knowledge of the relevant circumstances, but

19  permits a court to accept a guilty plea, with its accompanying waiver of various

20  constitutional rights, despite various forms of misapprehension under which a defendant

21  might labor." *Ruiz*, 536 U.S. at 630.

22         Plaintiffs fail to state a Fourteenth Amendment violation in Count Three based on

23  alleged deprivations of their state created liberty interests, and the Court will dismiss this

24  claim.

25         Because there are no claims remaining, the Court will grant Defendant's Motion to

26  Dismiss.

27  **III.    Other Motions**

28         In her Motion for Judicial Notice, Defendant moves the Court to take judicial notice

of public records, including relevant MCAO polices, in support of her opposition to Plaintiffs' Motion for Class Certification and her Motion to Dismiss. (Doc. 33.) The Court did not find these documents necessary to decide Defendant's Motion to Dismiss, and because there is no longer a need to discuss Plaintiffs' Motion for Class Certification, the Court will deny Defendant's Motion for Judicial Notice as moot. The Court will also deny as moot Plaintiffs' Motion for Class Certification.

   **IT IS ORDERED:**

   (1)   The reference to the Magistrate Judge is **withdrawn** as to Plaintiffs' Motion for Class Certification (Doc. 31), Defendant's Motion for Judicial Notice (Doc. 33), and Defendant's Motion to Dismiss (Docs. 40).

   (2)   Defendant's Motion to Dismiss (Doc. 40) is **granted**.

   (3)   Plaintiffs' Motion for Class Certification (Doc. 31) and Defendant's Motion for Judicial Notice (Doc. 33) are **denied as moot**.

   (4)   This action is **dismissed with prejudice** pursuant to Federal Rule of Civil Procedure 12(b)(6); the Clerk of Court is directed to **terminate this action** and enter judgment accordingly.

   Dated this 7th day of September, 2022.

G. Murray Snow
Chief United States District Judge